Shaun Setareh (SBN 204514)
    shaun@setarehlaw.com
Thomas Segal (SBN 222791)
    thomas@setarehlaw.com
Farrah Grant (SBN 293898)
    farrah@setarehlaw.com
Ashley Batiste (SBN 317526)
    ashley@setarehlaw.com
**SETAREH LAW GROUP**
315 S. Beverly Drive, Ste. 315
Beverly Hills, California  90212
Tel:    (310) 888-7771
Fax:    (310) 888-0109

Attorneys for Plaintiff,
JOSEPH L. SCHOFIELD

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH L. SCHOFIELD, on behalf of himself, all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>DELTA AIR LINES, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No. 3:18-cv-00382-EMC<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SHAUN SETAREH IN SUPPORT THEREOF**<br><br>***Hearing Information***<br>Date:          February 14, 2019<br>Time:         1:30 p.m.<br>Courtroom:  Courtroom 5<br>Judge:      Hon. Edward M. Chen<br><br>***Submitted Under Separate Cover***<br>1.  Declaration of Shaun Setareh;<br>2.  [Proposed] Order |

### NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on February 14, 2019 at 1:30 p.m., in Courtroom 5, 17th Floor of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco CA 94102, the Honorable Edward M. Chen presiding, Plaintiff Joseph Schofield ("Plaintiff"), on behalf of himself and all others similarly situated, will, and hereby does, move this Court to:

(1) Preliminarily approve the settlement described in the Settlement Agreement, attached as Exhibit 3 to the Declaration of Shaun Setareh;

(2) Approve distribution of the proposed Notice of Class Settlement to the Settlement Class;

(3) Appoint Plaintiff Joseph Schofield as Class Representative;

(4) Appoint Setareh Law Group as Class Counsel;

(5) Appoint Rust Consulting as claims administrator; and

(6) Set a hearing date and briefing schedule for final settlement approval and Plaintiff's fee and expense application.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration Shaun Setareh; (4) the Settlement Agreement; (5) the Notice of Class Action Settlement; (5) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (6) the records, pleadings, and papers filed in this action; and (7) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Respectfully submitted,

Dated:  January 3, 2019                     SETAREH LAW GROUP

BY _/s/_Shaun Setareh_____
                  SHAUN SETAREH
                  THOMAS SEGAL
                  Attorneys for Plaintiff
                  JOSEPH L. SCHOFIELD

# **TABLE OF CONTENTS**

I. INTRODUCTION…………………………………………………………………1

II. FACTS AND PROCEDURE…………………………………………...……..……2

    A.  Overview of the Litigation…...……………………………………………2

        1.  Form 1 …………………………………………………………..2

        2.  Form 2……………………………………………….…………..3

        3.  Motion to Transfer………………………………….…………..4

        4.  Motion for Summary Judgment………………………….……..4

    B.  Plaintiff's Investigation and Discovery…………………………….……..4

    C.  The Parties Engaged in Mediation and Arm's-Length Settlement Negotiations……5

    D.  Material Terms of the Proposed Class Action Settlement…………………..…5

        1.  The Proposed Settlement Class…………………..……………….5

        2.  The Settlement Benefits…………………….……………………5

        3.  A Narrow Release………… ……………………………………...5

        4.  A consumer-Friendly Settlement Find Distribution Process…...……………6

        5.  No Reversion to Defendant ………………………………………7

        6.  The Proposed Notice to the Settlement Class…………………………..…7

        7.  Proposed Attorney's Fees, Litigation Expense, and Service Award………...8

III. ARGUMENT……………………………………………………………….………9

    A.  The Court Should Grant Preliminary Approval of the Class Settlement …………...9

        1.  The Standard for Preliminary Approval Has Been Met…………………..…9

        2.  The Settlement Is Reasonable In Light of the Strengths and Weaknesses of Plaintiff's Case……………………………………………………...13

        3.  The Risk, Expense and Complexity of the Case, Including the Risk of Decertification, Favor Approval of the Settlement……………..…………15

        4.  The Amount Offered in Settlement Supports Approval………. …………...15

Notice of Motion and Motion for Preliminary
Approval of Class Action Settlement

5.  The Settlement Was Finalized After a Thorough Investigation……....……..17

6.  The Views of Experienced Counsel Should Be Accorded Substantial
    Weight……...………………………………………………………………17

B.  Conditional Class Certification is Appropriate for Settlement Purposes…………...18

1.  The Proposed Class Meets the Requirements of Rule 23………..………….18

2.  The Proposed Class Is Sufficiently Numerous ………………….…………18

3.  There are Questions of Law and Fact that Are Common to the Class……....19

4.  Plaintiff's Claims Are Typical of the Proposed Settlement Class…………..19

5.  Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests
    of the Proposed Settlement Class …..…………….…………………….....20

6.  Common Issues Predominate Over Individual Issues………………..……..23

7.  Class Settlement Is Superior to Other Available Means of Resolution….….23

8.  The Requested Attorney Fee is Reasonable………………..……................23

9.  The Requested Class Representative Enhancement Award is
    Reasonable………………………………………………….…................23

10. The Proposed Payment to the Settlement Administrator is Reasonable…....23

11. The Proposed Class Notice Adequately Informs Settlement Class
    Members About the Case and Proposed Settlement………………………...24

IV. CONCLUSION………………………………………………………...…………25

# TABLE OF AUTHORITIES

**Cases**

*Aceves v. AutoZone Inc.*, Case No. 5:14-CV-02032, ECF No. 58 (C.D. Cal. Nov. 18, 2016) ..... 16

*Acosta v. Trans Union*, 243 F.R.D. 377 (C.D. Cal. 2007) ................................................. 9

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ................................................. 18, 21

*Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980) .............................. 9

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ......................................................... 19

*Bassett v. ABM Parking Services, Inc.,* 883 F.3d 776 (9th Cir. 2018)........................................ 14

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010)............................................ 13

*Bedolla v. Allen,* 736 Fed.Appx. 614 (C.A.9 (Cal.) 2018)........................................................... 23

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ................................................. 16

*Churchill Village v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004).......................................... 10, 24

*Eisen v. Porsche Cars North American, Inc.*, Case No. 11- 09405, 2014 U.S. Dist.
LEXIS 14301, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) .................................... 17

*Eisen v. Porsche*, 2014 WL 439006................................................................... 18

*Feist v. Petco Animal Supplies, Inc.,* Case No. 3:16-cv-01369-H-DHB ECF No. 48 (S.D. Cal.
2018) ................................................................................................. 16

*Frank v. Estman Kodak Co.*, 288 F.R.D. 174 (W.D.N.Y. 2005)................................................ 16

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989)............................................................ 9

*Gilberg v. California Check Cashing Stores, Inc.*, Eastern District of California,
Case No. 2:15-cv-02309-JAM-AC ............................................................ 13

*Gribble v. Cool Transps., Inc*, 2008 U.S. Dist. LEXIS 115560 (C.D. Cal. 2008)...................... 10

*Guippone v. BH S&B Holdings LLC,* No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026
(S.D.N.Y. Oct. 28, 2011) ................................................................... 23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). ...................................................... 9

*In re M.L. Stern Overtime Litig*., No. 07-0118- BTM, 2009 U.S. Dist. LEXIS 31650,
(S.D. Cal. Apr. 13, 2009) ....................................................................... 9

*In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) .................. 13-14, 16

*Lane v. Facebook, Inc.*, No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) ...................................................................................................................................... 14

*LDK Solar Secs. Litig.*, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010) .............................. 16

*Lewis v. Southwest Airlines*, 2018 WL 400775 (N.D. Tex. January 11, 2018) ......................... 13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ..................................... 16, 17

*London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003)........................................... 13

*Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371 (3d Cir. 2012).................................................. 12

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007)................................... 19

*Marisol v. Giuliani*, 126 F.3d 372 (2nd Cir. 1997)................................................................. 19

*Miller v. CEVA Logistics USA Inc.*, 2015 WL 729638, *7 (N.D. Cal. 2015)............................ 15

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ....................................... 24

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............... 10, 16

*Nesbitt v. Postmates, Inc.*, San Francisco Superior Court Case No. CGC-15-547146................ 16

*Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS 37286, at *11  (N.D. Cal. Mar. 18, 2013) .................................................................................................................. 10

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................................. 11

*Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)............................................................... 17

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) .............................................................. 19

*Poinsignon v. Imperva*, 2018 WL 1709942, at *4 (N.D.Cal., 2018).........................................13

*Portal Software Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007) ........................................................................................................... 15

*Ramirez v. Trans Union, LLC*, 301 F.R.D. 408 (N.D. Cal. 2014) ............................................ 19

*Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) ...................................................... 19

*Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009).......................................... 11, 14, 15

*Rohm v. Thumbtack, Inc.*, 2017 WL 4642409 (N.D. Cal. 2017) ............................................. 15

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)............................................................... 11

*Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. 2007)........... 10

*Serna v. Big A Drug Stores, Inc.*, No. 07-0276 CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007) .................................................................................................. 13

*Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) ............................... 11

*Soman v. Alameda Health Sys.*, No. 17-cv-06076-JD, 2018 WL 6308185, at *3 (N.D. Cal. Dec. 3, 2018) ......................................................................................... 12

*Stanton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003) ............................................. 9

*Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. 2015) ................................................................................................... 16

*Torres v. Pet Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015) ..................................................................................... 13

*Torrisi v. Tuscson Elec.*, 8 F.3d 1370 (9th Cir. 1993) .................................................... 10

*Uber FCRA Litigation,* 2017 WL 2806698 (N.D. Cal. 2017) ....................................... 15

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ............ 14, 18, 22

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........................................ 22

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .............................................. 19

*Willes v. State Farm Fire & Cas. Co.*, 512 F.3d 565 (9th Cir. 2008) .............................. 11

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) .............................. 21

**Statutes**

15 U.S.C. § 1681n(a)(1)(A) ............................................................................... 1, 12, 14

28 U.S.C. § 140(a) ................................................................................................... 4

Fair Credit Reporting Act ("FCRA") 15 U.S.C. 1681 *et seq.* ............................... 1, 3, 4

Fed. R. Civ. P. 23(a)(1) ............................................................................................ 18

Fed. R. Civ. P. 23(a)(2) ............................................................................................ 19

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 20

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 18, 20

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 24

Fed. R. Civ. P. 23(e)(1) ........................................................................................ 9, 24

Fed. R. Civ. P. 23(e)(2) ............................................................................................ 9

**Other**

Manual for Complex Litigation § 21.632 (4th ed. 2004)................................................9-10, 18-19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

Plaintiff Joseph Schofield ("Plaintiff") moves the Court to preliminarily approve a class action settlement ("Settlement Agreement") with Defendant Delta Air Lines, Inc. ("Delta" or "Defendant") that confers substantial relief to all Settlement Class Members. The Settlement Agreement submitted for the Court's approval resolves Plaintiff's claims that Delta violated the Fair Credit Reporting Act ("FCRA"), 15. U.S.C. §§ 1681, et seq., and related California state laws.  Plaintiff alleges that before conducting a background check on applicants Delta failed to provide applicants with a stand-alone document that consists *solely* of the background check disclosure, as required under the law; and ancillary state law rights.

The settlement provides substantial relief in the form of a $2,300,000 non-reversionary settlement fund for approximately 44,100 class members.  Class members will not have to make claims. Instead, if they do not opt out a check will be mailed directly to them.  The settlement amount of $2,300,000 is an excellent result for the class. In an FCRA case, a prevailing plaintiff will receive statutory damages of between $100 and $1,000, if the plaintiff can establish the violation was willful. 15 U.S.C. § 1681n(a)(1)(A). The gross settlement payment here of $52.15 to each of the 44,100 Class Members compares favorably to recent FCRA settlements.

With a full understanding of the strengths and weaknesses of his case, Plaintiff engaged in arms'-length negotiations with Defendant, finally reaching an agreement following  private mediation and post mediation negotiations.  (Declaration of Shaun Setareh ("Setareh Decl.") ¶¶ 9, 11-12.) The underlying legal claims under the FCRA involve substantial risk because of the uncertain and evolving legal landscape regarding such claims.

In light of the risks of continuing with this litigation, Plaintiff submits that this proposed settlement, which guarantees that all Settlement Class Members will be paid, is fair, reasonable, and adequate. Accordingly, the parties respectfully request that the Court enter an order: (a) granting preliminary approval of the Settlement; (b) certifying the proposed Settlement Class; (c) appointing Plaintiff as the Class Representative; (d) appointing Setareh Law Group ("SLG") as Class Counsel; (e) approving the parties' proposed form and method of giving Settlement Class

Members notice of the action and the proposed Settlement; (f) directing that notice be given to Settlement Class Members in the proposed form and manner; and (g) setting a hearing date and briefing schedule for final settlement approval and Plaintiff's fee and expense application.

## II.    FACTS AND PROCEDURE

### A.  Overview of the Litigation

On October 17, 2017, Plaintiff filed a class action lawsuit alleging violation of the Fair Credit Reporting Act ("FCRA"), the Investigative Consumer Reporting Agencies Act ("ICRAA"), the Consumer Credit Reporting Agencies Act ("CCRAA") and the Business and Professions Code in San Francisco Superior Court. On January 17, 2018, Defendant removed the case to the United States District Court for the Northern District of California. The lawsuit alleges that the forms used by Delta to disclose pre-employment background checks do not comply with the requirements of the FCRA, ICRAA and CCRAA. Specifically, Plaintiff alleges that Delta violated the FCRA requirement that the disclosure form convey the employer's intent to obtain a credit report or background check on a current or prospective employee. Plaintiff further alleges that Delta violated the above statutes' requirement that the disclosure form be clear and conspicuous and consist solely of the  disclosure.  As such, Plaintiff contends that Delta failed to provide applicants with a stand-alone document that consists *solely* of the disclosure, as required under the law.  Instead, Plaintiff's position is that the disclosure forms include impermissible extraneous information, in direct contravention of the FCRA.

### 1.  Form 1

Plaintiff alleges that Form 1 does not comply with the FCRA for the following reasons: The FCRA forms Delta used during the class period are not lawfully compliant standalone disclosures.  Form 1, used from at least October 17, 2012 to the present, states that: "This authorization does not include the release of my medical information." (Setareh Decl. ¶ 6, Ex. 1.) It also contains the following statement: "I understand, however, that giving my consent does not require Delta to hire me nor does it create any sort of contract, obligation or duty between me and Delta." This statement is extraneous to the disclosure/ authorization and also is misleading; in that the FCRA imposes obligations on Delta once they have obtained a consumer report. For

example, if Delta were to decide after reviewing a consumer report not to hire him, Delta would have an obligation to provide a copy of the report and notification of the right to dispute information in the report. 15 U.S.C. § 1681b(b)(3)(A).

Additionally, Form 1 is not a standalone disclosure because it requires the reader to read the Fair Credit Reporting Act itself to understand it. The form states that: "I understand that a 'consumer report' or an 'investigative consumer report' about me, as those terms are defined in the federal Fair Credit Reporting Act, as amended, 15 U.S.C. §§ 1681 *et seq*. ("FCRA"), may be requested by Delta from a consumer reporting agency ("CRA")." The third paragraph of the form contains an explanation of what an Investigative Consumer Report is, but there is no explanation of what a Consumer Report is.  By referring to the statute for the definition, the job applicant must read the statute if they wish to understand the disclosure.

Form 1 also has an Instructions Page. By definition, the Instructions Page means that the form it is appended to is not a standalone disclosure. The document also states that: "Should Delta or the consumer reporting agency not be able to verify information you have provided in your application or resume, you will be contacted by a representative of Delta Airlines or the consumer reporting agency on behalf to provide additional information to complete the background investigation verification process." This admonition about what will happen if information in the applicant's resume or employment application cannot be verified is extraneous to the FCRA disclosure form.

### 2.   Form 2

Plaintiff alleges that Form 2 does not comply with the FCRA for the following reasons: Form 2, used from approximately March 2017 to the present, also contains an extraneous statement that states: "Also, the Company may not obtain medical information about you without your express consent to the release of medical information. Consent to the release of medical information is *not* covered by the authorization contained in this document." (Setareh Decl. ¶ 7, Ex. 2.) Like Form 1, Form 2 requires the job applicant to consult the text of the FCRA to understand the disclosure: "In connection with your relationship with _____ "Company" the Company may obtain a consumer report on you, as defined in the Federal Fair Credit Reporting

Act, 15 U.S.C. 1681 *et seq.*" Form 2 also contains extraneous information about state laws including California, Minnesota, Oklahoma, Maine, Maryland, Massachusetts, Minnesota, New Jersey, New York, Rhode Island, and Washington.

### 3.  Motion to Transfer

Delta filed a motion to transfer venue under 28 U.S.C. § 140(a) on August 15, 2018. (ECF No. 19). Defendant requested that the matter be transfer from this Court to the United States District Court for the Northern District of Georgia arguing that litigating this action in the Northern District of Georgia is more convenient for the parties and the witnesses and furthers the interest of justice.  Defendant withdrew their motion to transfer prior to Plaintiff filing an opposition, due to the parties' agreement to settle. If not for the settlement, Plaintiff would have vigorously opposed the motion to transfer.

### 4.  Motion for Summary Judgment

Delta filed a motion for summary judgment on August 15, 2018. (ECF No. 23.) The motion for summary judgment argued that: (1) Schofield's first through fourth claims for relief are barred by the applicable statutes of limitations under the FCRA, the ICRAA, and the CCRAA; (2) Schofield's third claim for relief under the ICRAA further fails because he has not suffered any actual damages and statutory damages are unavailable in class actions under the ICRAA; (3) Schofield's fourth claim for relief under the CCRAA further fails because Delta did not procure or cause to be procured a consumer credit report on Schofield; and (4) Schofield's fifth claim for relief under California's Unfair Competition Law ("UCL") fails because he does not seek restitution or have standing to pursue injunctive relief—the only available remedies under the UCL. Defendant withdrew their motion for summary judgment prior to Plaintiff filing an opposition, due to the parties' agreement to settle. If not for the settlement, Plaintiff would have vigorously opposed the motion for summary judgment.

### B.    Plaintiff's Investigation and Discovery

Prior to filing of this action, Plaintiff thoroughly investigated his claims.  Plaintiff also conducted investigation and discovery after filing the action in order to prove up his claims and rebut Delta's defenses.

Plaintiff alleges that Delta routinely procures credit and background reports to investigate current and former employees, including Plaintiff, and uses the information from these reports in connection with its hiring process without providing the legally required stand alone disclosures. As part of the investigation, Plaintiff's counsel reviewed many documents produced by Delta in order to confirm which forms were used and by whom during the class period. Plaintiff's counsel also reviewed Delta's background check policies, record retention policies, and the actual background check disclosure and authorization forms for those who applied for employment at Delta during the class period. (Setareh Decl. ¶ 5.)  Because this case turns on Delta's legal defense that Delta's noncompliance was purportedly not "willful" under the FCRA, Plaintiff's counsel thoroughly analyzed the evolving, and often conflicting case law governing FCRA class actions, as well as law governing related statutes such as FACTA. All of this review and investigation allowed Plaintiff's counsel to structure a settlement that provides benefits directly to the persons who were required to use the allegedly improper forms. (Setareh Decl. ¶ 8.)

**C. The Parties Engaged in Mediation and Arm's-Length Settlement Negotiations**

The proposed Settlement was the culmination of protracted discussions between the parties following a thorough analysis of the pertinent facts and law at issue.  The Parties attended a mediation on August 16, 2018 with mediator Steven Rottman, a well-regarded wage and class hour mediator.  The matter did not settle at mediation. After continued negotiations, the parties accepted a mediator's proposal, which resulted in the instant settlement. (Setareh Decl. ¶ 9.)

**D.  Material Terms of the Proposed Class Action Settlement**

**1.  The Proposed Settlement Class**

Settlement Class Members consist of all persons in the United States who applied for employment with Delta Air Lines, Inc. and were the subject of a consumer report that was procured by Delta or caused to be procured by Delta at any time from October 17, 2012, through February 14, 2019. (Settlement, ¶ 2.3.) Defendant represents that there are approximately 44,100 class members. (Settlement, ¶ 2.5.)

**2.  The Settlement Benefits**

Under the Settlement, all Settlement Class Members who do not submit valid and timely

Requests for Exclusion will receive settlement cash payment. In recognition of the fact that Defendant potentially has a statute of limitations defense against Class Members whose background check Defendant procured or caused to be procured before October 17, 2015, which is two years before Plaintiff filed the Action, the Net Settlement Amount shall be distributed to Class Members as follows:

> (a)     Sixty percent (60%) of the Net Settlement Amount shall be divided evenly among Class Members on a pro rata basis whose background check Defendant procured or caused to be procured on or after October 17, 2015 through February 14, 2019;
>
> (b)     Forty percent (40%) of the Net Settlement Amount shall be divided evenly among Class Members on a pro rata basis whose background check Defendant procured or caused to be procured from October 17, 2012 through October 16, 2015; and
>
> (c)     Any payments which are not cashed after one-hundred eighty (180) days following issuance shall be void.   Any unclaimed portion of the Net Settlement Amount shall be paid as a *cy pres* award to the Education Fund of the National Association of Consumer Advocates ("NACA Education Fund"), a 501c(3) non-profit organization.

(Settlement ¶ 5.6.)

The parties have negotiated protection in the event that the class size grows materially between the mediation and preliminary approval being granted. If the total number of Class Members exceeds 46,000 (roughly 5% more than the approximate class count), then Defendant will supplement the settlement fund by $50.  For example, if the total number of Class Members is 46,010, then Defendant will supplement the settlement fund by $500 ($50 x 10 Class Members).  The Parties agree that any supplementation of the settlement fund will not increase the potential award of attorney fees to Class Counsel, which is set at a maximum of up to 33 1/3% of $2,300,000.[1] (Settlement, ¶ 5.2.2.)

*//*

---

[1] The Settlement Agreement allows Plaintiff's counsel to seek up to a third of $2,300,000. (Settlement ¶ 5.4.1.)  Therefore, Plaintiff's counsel can seek up to $766,666.66 in fees subject to court approval. Plaintiff's counsel is going to seek 25% of the settlement amount. If the escalator clause causes the settlement amount to increase, Plaintiff's counsel will seek up to 25% of the full amount, but not more than $766,666.66, since the settlement provides that is the maximum amount that can be awarded.

### 3. A Narrow Release

In exchange for the benefits and for other good and valuable consideration, Settlement Class Members who have not timely and properly opted out of the settlement will release Delta for:

> "claims that were pled or could have been pled based on the factual allegations contained in the Complaint and covers the period from October 17, 2012, through February 14, 2019, including, without limitation, any claims, actions, causes of action, demands, damages, losses, or remedies, whether based upon federal, state, or local statutes or federal, state, or local common law, relating to, based upon, resulting from, or arising out of the alleged violations of the Fair Credit Reporting Act, including but not limited to 15 U.S.C. § 1681b(b)(2)(A), (d)(a)(1) and (g)(c), Investigative Consumer Reporting Agencies Act (California Civil Code §§ 1786 *et seq.*), Consumer Credit Reporting Agencies Act (California Civil Code §§ 1785 *et seq.*), California Business & Professions Code §§ 17200, *et seq.*, or any other federal, state or local law governing the procurement or use of background/credit checks, including laws regarding background check disclosures and authorizations and pre-adverse and adverse action notices, other penalties, related tort, contract, and punitive damages claims, claims for interest, attorneys' fees, litigation and other costs, expenses, restitution, and equitable and declaratory relief.  Plaintiff and each settlement Class Member shall further automatically be deemed to have waived and released any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code with respect to the released claims which arise from the subject of this Settlement, including any and all claims under the Fair Credit Reporting Act and any similar state or local claims, including those regarding an allegedly inadequate or otherwise improper disclosure about the procurement or use of consumer reports for employment purposes or pre-adverse and adverse action notices."

(Settlement ¶ 2.28.)

This release is narrowly and appropriately tailored to the allegations asserted by Plaintiff in this Complaint.  In addition, Plaintiff Schofield will execute a general release of claims, releasing any known or unknown claims he may have had against Delta.

### 4.  A Consumer- Friendly Settlement Fund Distribution Process

The parties have negotiated a mailing procedure to minimize the burden to Settlement Class Members.  No class members will need to make a claim in order to receive a payment. Within 15 days after the date the court enters the Order of Final Approval of the class settlement, but no earlier than January 18, 2019, Defendant will deposit the Gross Settlement Amount into a settlement fund established by the third-party claims administrator for the purposes of

administering the settlement. All payments to Settlement Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail.

### 5. No Reversion to Defendant

No money will revert to the Defendant. Any residue from uncashed settlement checks will go to a *cy pres* recipient, proposed to be the Education Fund of the National Association of Consumer Advocates. The Education Fund focuses on the fostering justice for consumers, promoting consumer legal rights, educating the public about relevant issues, encouraging communication between consumers, consumer advocates and consumer attorneys, and engaging in activities that describe and expose unfair business practices that harm consumers.  https://www.consumeradvocates.org/about-naca. As such, the Education Fund has a direct connection to Plaintiff's claims in this case.

### 6. The Proposed Notice to the Settlement Class

Within 30 days of preliminary approval of the Settlement by the Court, Delta shall provide to the Settlement Administrator a database with class information.  This database shall be based on Delta's payroll and other business records and in a format reasonably acceptable to the Settlement Administrator.  (Settlement ¶ 6.2.1.)  Within 14 days of receiving the Database from Defendant, the Settlement Administrator will mail a Postcard Notice to all Settlement Class Members, in connection with the form attached as Exhibit 5 to the Setareh Declaration, via first-class U.S. Mail.  (Setareh Decl. ¶ 6.2.3.) The Notice shall be mailed in English to each Settlement Class Member's last known mailing address. In the event that after the first mailing of the Notice and prior to the Final Approval Hearing, any Notice is returned to the Settlement Administrator by the U.S. Postal Service without a forwarding address, the Settlement Administrator shall perform a standard skip-trace in an effort to ascertain the current address and/or telephone number of the Class Member.  If a current address is ascertained, the Settlement Administrator shall re mail the Notice within 3 days.

The Long Form Settlement Notice attached as Exhibit 4 to the Declaration of Shaun Setareh will be posted to the settlement website.  (Setareh Decl. ¶ 14.) The Postcard Notice will direct class members to the website to view the Notice.

No later than fourteen (14) days prior to the Final Approval hearing, Defendant's Counsel shall file with the Court a declaration attesting that CAFA Notice has properly been served pursuant to 28 U.S.C. §1715. (Settlement ¶ 6.3.3.)

### 7. Proposed Attorney's Fees, Litigation Expenses, and Service Award

The Settlement Agreement provides that Class Counsel may apply for attorneys' fees not to exceed 33 1/3 of the Gross Settlement Amount. Although the Settlement Agreement provides for 33-1/3 of the Gross Settlement Amount in attorneys' fees, Class Counsel is only seeking attorney's fees of 25% of the Gross Settlement Amount. Plaintiff here will seek an order from the Court awarding Class Counsel their reasonable attorneys' fees of $575,000 (25% of the Gross Settlement Amount) and reasonable out-of-pocket costs incurred in this action. (Settlement ¶ 5.4.1.)  Class counsel has incurred costs of over $10,000 in litigating this matter on a contingent basis. (*Id.*) The motion for attorney's fees will be posted on the settlement website 14 days prior to the deadline for objections. The parties intend to request a service award in the amount of $10,000 to Plaintiff Schofield. (Settlement ¶ 5.3.1.)

## III.   ARGUMENT

### A.   The Court Should Grant Preliminary Approval of the Class Settlement

#### 1. The Standard for Preliminary Approval Has Been Met

Class action settlements must be approved by the court, and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A).  Court approval occurs in three steps: (1) preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to object or exclude themselves from the settlement; and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement. *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

In reviewing class action settlements, the court should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  This reflects the longstanding policy in favor of encouraging settlement of class action

suits, as "[l]itigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

In the preliminary approval stage, the Court first determines whether a class exists. *Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003). Then, the Court evaluates "whether the settlement is within the range of possible approval, such that there 'is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.'" *In re M.L. Stern Overtime Litig.*, No. 07-0118- BTM, 2009 U.S. Dist. LEXIS 31650, at *10 (S.D. Cal. Apr. 13, 2009) (quoting *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980)); *see also, Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original). In other words, the Court makes only a preliminary determination of the settlement's fairness, reasonableness, and adequacy, granting preliminary approval unless the settlement terms are so unacceptable that a formal fairness hearing would be a waste of time. *See* Manual for Complex Litigation §21.632.

At the outset, the fairness and reasonableness of a settlement agreement is presumed "where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS 37286, at *11 (N.D. Cal. Mar. 18, 2013). This Settlement is the product of arms'-length negotiations conducted, with both sides agreeing to the final terms after mediating with mediator Steven Rottman, a distinguished mediator respected by California courts. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. 2007). Thus, this non- collusive Settlement is entitled to "a presumption of fairness." *Gribble v. Cool Transps., Inc.*, 2008 U.S. Dist. LEXIS 115560, at *26 (C.D. Cal. 2008).

In addition, the Court may consider some or all of the following factors in evaluating the reasonableness of a settlement: the extent of discovery completed and the stage of proceedings; the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; and the experience and views of counsel. *See Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (citing *Torrisi v. Tuscson Elec.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

### 2.  The Settlement Is Reasonable In Light of the Strengths and Weaknesses of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). In assessing the strength of the plaintiff's case and the probability for success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation omitted).  There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Here, Plaintiff alleges that Delta used forms that included both the disclosure form and extraneous information in the same document.  Plaintiff contends that Delta's use of this document in employment applications facially violates the FCRA, which provides, in relevant part:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) *a clear and conspicuous disclosure has been made in writing* to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained

for employment purposes; and (ii) that consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

However, the analysis does not end there.  Plaintiff must also prove that the violation was "willful" under 15 U.S.C. § 1681n(a).  In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty." *See also Willes v State Farm Fire & Cas. Co*., 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard). Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense. *See, e.g., Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) (holding that a defendant was not liable for statutory damages because the violation arose from a "reasonable construction" that the truncation requirement of § 1681c(g) was inapplicable to email receipts); *Long v Tommy Hilfiger U.S.A*., 671 F.3d 371(3d Cir. 2012) (holding that defendant were not liable under the FCRA because their practice was merely a "careless interpretation" of the law and is not a "willful" violation).

The Ninth Circuit's decision in *Syed* held that: "in light of the clear statutory language that the disclosure document must consist solely of the disclosure, a prospective employer's violation of the FCRA is willful when the employer includes terms in addition to the disclosure." *Syed v. M-I LLC*, 852 F.3d 492, 496 (9th Cir. March 20, 2017.)

Here, Defendant would argue that the state law disclosures are closely related enough to the purpose of the disclosure that they should be regarded as not violating the FCRA or at least that any violation should not be deemed willful.  *See, e.g., Soman v. Alameda Health Sys.*, No. 17-cv-06076-JD, 2018 WL 6308185, at *3 (N.D. Cal. Dec. 3, 2018) ("The three state-law boxes are not of a sort that would make the notice in the FCRA disclosure less than clear and conspicuous in any meaningful way or violate the intent of being 'solely' disclosures.").[2]  As for

---

[2] An appeal was filed regarding the decision in *Soman. Soman v. Alameda Health Sys.*, No. 17-cv-06076-JD, ECF No. 51 (N.D. Cal. Dec. 11, 2018).  In contrast to *Soman*, this Court denied a

*Schofield v. Delta Air Lines, Inc.*                                   Notice of Motion and Motion for Preliminary
                                                                        Approval of Class Action Settlement

the statement in the disclosure explaining that the authorization of the background check does not "create any sort of contract, obligation or duty between me and Delta," Delta would argue that the statement does not detract from the force of the disclosure and even if did the violation was not willful.

Delta's motion for summary judgment alleged a variety of Defendant's defenses, arguing that: (1) Schofield's first through fourth claims for relief are barred by the applicable statutes of limitations under the FCRA, the ICRAA, and the CCRAA; (2) Schofield's third claim for relief under the ICRAA further fails because he has not suffered any actual damages and statutory damages are unavailable in class actions under the ICRAA; (3) Schofield's fourth claim for relief under the CCRAA further fails because Delta did not procure or cause to be procured a consumer credit report on Schofield; and (4) Schofield's fifth claim for relief under the UCL fails because he does not seek restitution or have standing to pursue injunctive relief—the only available remedies under the UCL. Defendant withdrew their motion for summary judgment prior to Plaintiff filing an opposition, due to the parties' agreement to settle. If not for the settlement, Plaintiff would have vigorously opposed the motion for summary judgment.

The Setareh Law Group has been involved as counsel in two standalone disclosure cases where summary judgment was granted in favor of the defendant.  Those cases are *Lewis v. Southwest Airlines*, 2018 WL 400775 (N.D. Tex. January 11, 2018) and *Gilberg v. California Check Cashing Stores, Inc.*, Eastern District of California Case No. 2:15-cv-02309-JAM-AC (summary judgment granted June 13, 2017). Both are cases where the FCRA disclosure form contained extraneous information but not a *Syed* type liability release. (Setareh Decl. ¶ 22.)

The availability of these defenses to Defendant, coupled with Plaintiff's burden to show that Defendant engaged in "reckless disregard of statutory duty," make it challenging for Plaintiff to prove ultimate liability. *See In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014) (finding that the "strength of plaintiff's case" factor "weighs in favor of

---

motion to dismiss involving similar forms in *Poinsignon v. Imperva*, 2018 WL 1709942, at *4 (N.D.Cal., 2018).

settlement" where "willfulness" under FCRA is a triable issue); *see also Torres v. Pet Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015) (Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this issue of willfulness[under 15 U.S.C. §1681n]…[this] weighs in favor of settlement").

As some courts have categorically rejected the theory of liability advanced here, Plaintiff faces substantial risk of a complete loss in this case.  Plaintiff also faces the prospect that the Court could rule that Plaintiff's claims are time-barred.

Some courts have refused to grant class certification for cases seeking statutory penalties on the grounds that liability "would be enormous and completely out of proportion to any harm suffered by the plaintiff." *Serna v. Big A Drug Stores, Inc.*, No. 07-0276 CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007) (quoting *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003)). While the Ninth Circuit clarified that such matters are properly considered at the merits stage, the court also observed that the district court may have the power to reduce the amount in penalties as "constitutionally excessive" even if the plaintiff were to prevail. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010).

Defendant withdrew their motion to transfer prior to Plaintiff filing an opposition, due to the parties' agreement to settle. If not for the settlement, Plaintiff would have vigorously opposed the motion to transfer. If Delta's motion to transfer venue was granted, this case would have been transferred from this Court to the United States District Court for the Northern District of Georgia, which would have made successfully litigating the matter much more difficult for Plaintiff and his counsel.

In light of the challenges Plaintiff faces moving forward, the proposed Settlement represents a fair and adequate resolution of these claims.

### 3. The Risk, Expense and Complexity of the Case, Including the Risk of Decertification, Favor Approval of the Settlement

While this case is not factually complex, the uncertain legal landscape creates a substantial risk of proceeding to certification and beyond. Even if Plaintiff were to prevail in certification, the costs for both parties would mount, and Plaintiff would face "substantial risk of incurring the

expense of a trial without any recovery," given that Delta would argue that class members incurred no actual damages.  *Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 451.

Furthermore, only recently was there substantial litigation on the FCRA, and litigants face a greater chance of changes in case law or statutory enactments that will eliminate liability. *See Bassett v. ABM Parking Services, Inc.,* 883 F.3d 776, 778 (9th Cir. 2018) (describing an FCRA amendment in 2008 that insulated merchants from liability on printed expiration date on a receipt). Plaintiff thus faces additional "risk that an opinion could issue changing the legal landscape in this relatively new area of statutory law," which favors settlement. *Id.* And even if Plaintiff were to succeed in certifying the class, the "risk that a class action may be decertified at any time generally weighs in favor of settlement." *Lane v. Facebook, Inc.*, No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) (citing *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)).

Ultimately, in considering the risks of litigation, "a court may consider the vagaries of litigation of immediate recovery by way of compromise to the mere possibility of relief, after protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal quotations omitted). Here, the Settlement delivers immediate recovery for all Settlement Class Members and avoids the risks and expenses of protracted litigation, including potential interlocutory appeals and an appeal after a trial. This factor supports approving the Settlement. *See In re Portal Software Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the inherent risks of proceeding to… trial and appeal also support the settlement).

### 4.  The Amount Offered in Settlement Supports Approval

Defendant is paying $2,300,000 to settle this case.  The Ninth Circuit has held that the reasonableness of a settlement should be evaluated in relation to the potential compensatory damages, not including any penalties that might be awarded.  *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 964 (9th Cir. 2009); *see also Miller v. CEVA Logistics USA Inc.*, 2015 WL 729638, *7 (N.D. Cal. 2015) (accepting settlement valuation based on damages exclusive of interest and penalties). The class members have relatively small amounts of money at stake. There are no

measurable economic damages only potential statutory damages. The FCRA's damages provision limits recovery to between $100 and $1,000 or actual damages, whichever is greater. With approximately 44,100 class members, the FCRA statutory damages i.e., the core claim in the Action, are between $4,410,000 to $44,100,000. It is reasonable to assume that a jury in this case would enter an award at the lower end of the potential $100 to $1,000 range.[3] In Plaintiff's view, this is a favorable result.

The total settlement amount is $2.3 million for a class of approximately 44,100 class members. Class members do not need to make a claim but instead will be mailed a check directly. The settlement is also non-reversionary. By contrast, *Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final approval) involved a claims made settlement (albeit a non-reversionary one) where 66,676 class members shared in a $225,000 settlement. Similarly, *In re Uber FCRA Litigation,* 2017 WL 2806698 (N.D. Cal. 2017) (granting preliminary approval) involved a claims made settlement (also non-reversionary) where 1,025,954 class members shared in a $7.5 million settlement. Therefore, this case has a gross recovery of $52.15 per class member compared to $3.3 per class member for the *Thumbtack* case and $7.31 per class member for the *Uber* case. These numbers compare favorably with other recent settlements as well. *See, e.g., Nesbitt v. Postmates, Inc.,* San Francisco Superior Court Case No. CGC-15-547146 (final approval granted on November 8, 2017; 186,988 class members shared in a $2,500,000 settlement fund, meaning the gross settlement amount per class member was $13.30 per class member); *Aceves v. AutoZone Inc.,* Case No. 5:14-CV-02032, ECF No. 58 (C.D. Cal. Nov. 18, 2016) (granting final approval where 206,650 class members shared in a $5,700,000 settlement--$27.58 gross and approximately $20 net per class member); *Feist v. Petco Animal Supplies, Inc.,* Case No. 3:16-cv-01369-H-DHB ECF No. 48 (S.D. Cal. 2018)  (granting final approval; 37,279 class members shared in a $1,200,000 settlement--$32 gross and approximately $20 net per class member).

---

[3] Plaintiff submits it is unlikely that a jury would render an award which was close to the maximum $1,000 per violation. While Plaintiff believes that Defendant's disclosure forms violate the law, the underlying conduct is not such that it would inflame the passions of a jury.

*Schofield v. Delta Air Lines, Inc.*                                    Notice of Motion and Motion for Preliminary
                                                                         Approval of Class Action Settlement

The settlement percentage here is also well above the amount of many non-FCRA settlements granted final approval by courts within the Ninth Circuit. *See, e.g., Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. 2015) (7.3% of the "estimated trial award"); *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (3%); *In re LDK Solar Secs. Litig.*, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010) (5% of "plaintiff's expert estimated damages"). Of course, it should not be surprising that a settlement yields less than what the class could theoretically have recovered at trial. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes"). Importantly, the reasonableness of a settlement is not dependent upon the amount approaching the potential recovery plaintiffs might receive if successful at trial. *See Nat'l. Rural Tele. Coop.*, 221 F.R.D. at 527. Indeed, compromise is the very nature of settlement. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979). Moreover, courts recognize that there is an inherent "range of reasonableness" in determining whether to approve a proposed settlement, a range which recognizes the uncertainties of law and fact and attendant risks and costs associated with taking any litigation to completion. *See Frank v. Estman Kodak Co.*, 288 F.R.D. 174, 186 (W.D.N.Y. 2005).

### 5.   The Settlement Was Finalized After a Thorough Investigation

Courts may also consider the extent of discovery and the current stage of the litigation to evaluate whether parties have sufficient information to make an informed decision to settle the action. *See Linney*, 151 F.3d at 1239. A settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient investigation has been conducted. *See Eisen v. Porsche Cars North American, Inc.*, Case No. 11- 09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014) (finding that counsel had "ample information and opportunity to assess the strengths and weaknesses of their claims" despite "discovery [being] limited because the parties decided to pursue settlement discussions early on.").

Plaintiff engaged in extensive investigation and discovery, including reviewing documents. (*See* Setareh Decl. ¶ 23.) Based on this discovery and on their independent

investigation and evaluation, Plaintiff's counsel is of the opinion that this Settlement for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation of this type, as well as the various defenses asserted by Delta.

> **6.** **The Views of Experienced Counsel Should Be Accorded Substantial Weight**

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, the parties achieved a settlement after a thorough review of relevant documents and information, as well as an analysis of the parties' claims and defenses.  The expectations of all parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-length negotiations and finalized with the assistance of an experienced mediator who made a mediator's proposal.

Plaintiff was represented by experienced class action counsel possessing significant experience in class action matters. (*See* Setareh Decl. ¶ 17.) Likewise, Delta's counsel, Morgan Lewis & Bockius LLP, is a nationally recognized law firm. Thus, the parties' recommendation to approve this Settlement should "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience and views of counsel and the involvement of a mediator in approving a settlement resolving automotive defect allegations).

Based on the satisfaction of the *Churchill* factors, the Court should find the proposed Settlement to be fair and adequate.

> **B.** **Conditional Class Certification Is Appropriate for Settlement Purposes**

> > **1.** **The Proposed Class Meets the Requirements of Rule 23**

Before granting preliminary approval of the settlement, the Court should determine that the proposed settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*,

521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632.  An analysis of the requirements of Rule 23(a) and (b)(3), commonly referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed Settlement Class is appropriate.

### 2.      The Proposed Class Is Sufficiently Numerous

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, courts will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members).  Here, the proposed Settlement Class consists of  all persons in the United States who applied for employment with Delta Air Lines, Inc. and were the subject of a consumer report that was procured by Delta or caused to be procured by Delta at any time from October 17, 2012, through February 14, 2019. (Settlement, ¶ 2.3.) Defendant estimates 44,100 Settlement Class Members fall within the class definition, satisfying the numerosity requirement.

### 3.      There are Questions of Law and Fact that Are Common to the Class

The second Rule 23(a) requirement is commonality, which is satisfied "if there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The operative criterion for commonality is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The commonality requirement is "construed permissively." *Hanlon*, 150 F.3d at 1019-1020. Where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas,' Inc*., 536 F.3d 975, 978-79 (9th Cir. 2008).

Here, each Class Member executed a "preauthorization" form disclosing the employer's intent to obtain a credit report or background check on a current or prospective employee. One single common question resolves the dispute: whether Delta willfully violated the law by using these forms. Accordingly, the Court should find commonality. *See Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 417-418 (N.D. Cal. 2014) (finding commonality on a contested certification

motion where one common question resolves the issue of whether a defendant violated the FCRA by failing to include certain mandated information in the disclosure form).

### 4. Plaintiff's Claims Are Typical of the Proposed Settlement Class

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020)). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

Here, Plaintiff asserts that Settlement Class Members' claims arising from Delta's alleged unlawful use of the disclosure forms are reasonably co-extensive with the legal claims asserted by Plaintiff. Each Settlement Class Member's claims arise from the same underlying conduct—namely, Delta's alleged failure to use a disclosure form free of extraneous language, in contravention of the FCRA. Plaintiff's claims are thus typical of the Class.

### 5. Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class

Adequacy is satisfied, because "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). Adequacy will be found if (1) the proposed representative plaintiff does not have conflicts of interest with the proposed class, and (2) the plaintiff is represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020. Here, Plaintiff is adequate since he has no conflict of interest with the proposed Class. In addition, Plaintiff is represented by competent counsel with deep experience in litigating class actions, and who do not have a conflict of interest with the class. (*See* Setareh Decl. ¶¶ 16-18, 25.) Thus, Plaintiff satisfies the adequacy prong.

**6. Common Issues Predominate Over Individual Issues**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022.  Here, the proposed Class is maintainable under Rule 23(b)(3), as common questions predominate over any question affecting only individual members, and class resolution is superior to other available methods for a fair resolution of the controversy. *Id.* (citing Fed. R. Civ. P. 23(b)(3)).

Here, for purposes of settlement, the predominance test is satisfied, as the proposed Settlement makes relief available for all Settlement Class Members based solely on easily ascertainable criteria, bypassing whatever individual evidentiary and factual issues that could arise in litigation in determining liability or damages. Consequently, common questions predominate over individual issues.

**7.    Class Settlement Is Superior to Other Available Means of Resolution**

Similarly, there can be little doubt that resolving all Settlement Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023.  Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrate the advantages of a collective bargaining and resolution process.

Furthermore, manageability at trial is not a concern in the class action settlement context, "for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Additionally, although the benefits of the Settlement negotiated on behalf of the Class are significant, the amount of penalties made available for FCRA violations, ranging from $100 to $1,000, is not nearly enough to incentivize individual class members into action. *See Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class certification."); *Amchem*, 521 U.S. at 617 ("The policy at the very

core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."). Here, the efforts and funds required to marshal the type of evidence, including potentially expert testimony, to establish liability against well-financed corporate defendant would also discourage Settlement Class Members from pursuing litigation.

The superiority of proceeding through the class action mechanism is demonstrable in this case. Through the class action device, Plaintiff's counsel was able to negotiate a global Settlement with Delta that, if approved, will provide Settlement Class Members with immediate monetary relief. As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are satisfied, certification of the proposed Settlement Class is appropriate.

### 8.     The Requested Attorney Fee is Reasonable

The Settlement Agreement provides for up to 33-1/3 of the Gross Settlement Amount in attorneys' fees, and for reimbursement of reasonable litigation costs. (Settlement ¶ 5.4.1.) Plaintiff is only seeking attorney's fees of 25% of the Gross Settlement Amount. These provisions are fair, adequate and reasonable, and fall well-within the range of reasonable fees articulated in the relevant Ninth Circuit case law.  It is well settled that "the primary basis of the fee award remains the percentage method," (*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002),) and 33 1/3 percent is within the established reasonable range for common-fund cases. *See, e.g., Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) ["[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value"].

The work done in this case by Class Counsel includes drafting pleadings, propounding written discovery, reviewing documents produced by Defendant, working up and drafting a mediation brief, working with an expert to analyze the data produced by Defendant, reviewing and beginning to work an opposition to Defendant's motion for summary judgment, reviewing

and beginning to work an opposition to Defendant's motion to transfer venue, work on a draft motion for class certification, and drafting a motion for preliminary approval. (Setareh Decl. ¶ 23.)

Attorney fees of 25 percent of the Gross Settlement Amount ($575,000) is reasonable given the amount of work and quality of work performed by Class Counsel and the fact that Class Counsel received an excellent award for the class. This case has a gross recovery of $52.15 per class member, which compares very favorably to $3.3 per class member for the *Thumbtack* case and $7.31 per class member for the *Uber* case. These numbers compare favorably with other recent settlements as well.[4] Additionally, the settlement has nonmonetary value, in that Plaintiff anticipates that Defendant will modify their background check practices to be in compliance with the law moving forward. *See e.g. Bedolla v. Allen*, 736 Fed.Appx. 614, 616 (C.A.9 (Cal.), 2018).

**9.    The Requested Class Representative Enhancement Award is Reasonable**

It is common in class action cases to provide enhancement awards to named plaintiffs. *See Newberg* § 11:38 (4th ed. 2008). Here, Plaintiff requests an enhancement award of $10,000. This award is reasonable as Plaintiff has expended significant time and energy litigating his case. Plaintiff has been a diligent class representative working to provide his attorneys with information. (Setareh Decl. ¶ 25.) In this case, the requested service enhancement is justified in light of the reputational risk Plaintiff assumed in bringing an employment class action against his employer. *See Guippone v. BH S&B Holdings LLC,* No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members.").

**10.    The Proposed Payment to the Settlement Administrator is Reasonable**

After soliciting four bids, Class Counsel has selected Rust Consulting as the administrator. (Setareh Decl. ¶ 26.) Of the four bids received, Rust Consulting provided the lowest bid. Class

---

[4] This is discussed *supra* in section 4 titled "The Amount Offered in Settlement Supports Approval."

counsel determined that based on past experience with Rust Consulting and its competitive bid that Rust Consulting was the best choice. (*Id.*) Rust Consulting has extensive experience in administering Class Action Settlements. The Settlement Agreement states that the Settlement Administrator shall be reimbursed from the Gross Settlement Amount for the reasonably incurred fees and expenses in administering the settlement. (Settlement ¶ 2.32.) Rust Consulting estimates that the administration cost for this case will be $70,000. (Setareh Decl. ¶ 26.) In class counsel's experience these estimated costs are reasonable and necessary to effectuate the settlement.

### 11.    The Proposed Class Notice Adequately Informs Settlement Class Members About the Case and Proposed Settlement

Upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition, Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice given "must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The parties have agreed on a notice plan that satisfies the requirements of Rule 23. (Settlement ¶ 6.2.)  Under this plan, Delta will pay a claims administrator to mail a Postcard Notice to all Settlement Class Members as identified in Delta's files. The Postcard Notice will summarize the terms of the settlement and direct the class members to a settlement website which has the full notice posted.  The Settlement Notice includes all the content required by Rule 23(c)(2)(B), such as a description of the action and Class claims, as well as the Settlement Class Members' right to opt out of, object to, or comment on the proposed Settlement, including any application for attorneys' fees, costs, and service awards. *See Churchill Village*, 361 F.3d at 576 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation omitted).

The short and long form notices are easily understandable. The long form notice includes contact information for class counsel and instructions on how to obtain additional information from the Court or by reviewing documents posted on the case website.

Both the long  short form notices include the address for a website, maintained by the administrator, that will have links to the notice, motions for approval and for attorneys' fees. Both the long and short form notices state the date of the final approval hearing and state that the hearing date may change.

## IV.    <u>CONCLUSION</u>

The parties have negotiated a fair and reasonable settlement.  Accordingly, Plaintiff moves the Court to preliminarily approve the Settlement Agreement; direct the dissemination of notice to the class as proposed; and set a hearing date and briefing schedule for final Settlement approval and Plaintiff's fee and expense application.


Respectfully submitted,

SETAREH LAW GROUP


Dated: January 3, 2019              BY___*/s/  Shaun Setareh*_____
                                                  SHAUN SETAREH
                                                  THOMAS SEGAL
                                                  Attorneys for Plaintiff
                                                  JOSEPH L. SCHOFIELD

**PROOF OF SERVICE**

I am a citizen of the United States and am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 315 South Beverly Drive, Suite 315 Beverly Hills, CA 90212.

On January 3, 2019, I served the foregoing documents described as:
**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SHAUN SETAREH IN SUPPORT THEREOF**

**[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

in this action by transmitting a true copy thereof enclosed in a sealed envelope addressed as follows:

Robert Jon Henricks Esq.
Maureen Beckley Esq.
**MORGAN, LEWIS & BROCKIUS LLP**
One Market, Spear Tower
San Francisco, CA 94105
e-mail
    RjHendricks@morganlewis.com
    Maureen.Beckley@morganlewis.com
Counsel for Defendant  Delta Airlines, Inc.

Andrew Fredrick Esq.
**MORGAN, LEWIS & BROCKIUS LLP**
1400 Page Mill Road
Palo Alto, CA 94304
e-mail
    Andrew.frederick@morganlewis.com
Counsel for Defendant Delta Airlines, Inc.

**[X]     BY ECF (ELECTRONIC CASE FILING):** I e-filed the above-detailed documents utilizing the United States District Court, Northern District of California's mandated ECF (Electronic Case Filing) service. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the documents upon confirmation of e-filing.

**[X]     FEDERAL** I declare under penalty of perjury under the laws of the United States of America that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 3, 2019, at Beverly Hills, California.

_____
JUANITA FERNANDEZ