UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH L. SCHOFIELD,

Plaintiff,

v.

DELTA AIR LINES, INC.,

Defendant.

Case No. 18-cv-00382-EMC

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Docket No. 40

The above-referenced case is a class action for violations of the Fair Credit Reporting Act ("FCRA"), the California Investigative Consumer Reporting Agencies Act ("ICRAA"), and the Business and Professions Code. Currently pending before the Court is a motion for preliminary approval of class action settlement for all of the class members' claims.

Plaintiffs are individuals who applied for employment at Defendant Delta Airlines, Inc. and were given inadequate disclosure documents when consenting to background checks. More specifically, Plaintiffs allege that Defendant did not provide a stand-alone form consisting of solely a background check disclosure form, as required by the FCRA and its counterpart state laws. The parties have agreed to settle this dispute and now seek the Court's approval of the proposed settlement. The pending motion requests the Court grant preliminary approval of the class settlement.

Having considered the motion and accompanying filings, as well as oral argument of counsel, the Court hereby **GRANTS** the motion for preliminary approval.

## I.       FACTUAL & PROCEDURAL BACKGROUND

A.       Factual Allegations

Named Plaintiff Schofield alleges that Defendant Delta Airlines, Inc. acquired consumer,

investigative consumer and/or consumer credit reports through background checks from current and former employees without providing proper disclosures and obtaining proper authorizations. Plaintiff alleges these acts violated the FCRA, ICRAA, California Consumer Credit Reporting Agencies Act, as well as the Business and Professions Code. Plaintiff contends that the disclosures are inadequate because they were not clear and unambiguous, as required by the FCRA. They allege that Defendant's documents contained extraneous information and did not consist solely of the disclosure in violation of the FCRA.

B.    Procedural History

This case was removed from the San Francisco Superior Court. Defendant filed a motion for summary judgment and a motion to transfer venue. Plaintiff did not oppose these motions because the parties settled before the opposition responses were due. Defendant argues in its motion for summary judgment that Plaintiff's claims under the FCRA, ICRAA, and CCRAA are time barred because he had to bring this action within two years of knowing that a background check took place. Defendant also contends that Plaintiff cannot allege damages for the ICRAA, it contends it did not actually obtain a consumer credit report against Plaintiff, and his Unfair Business claim fails as matter of law because he can only obtain restitution or injunctive relief (not damages). Plaintiff alleges that Defendant willfully failed to provide a stand-alone disclosure of Defendant's intention to conduct a background check.

C.    The Settlement Agreement

The Settlement Agreement releases the FCRA and the state law claims related to Defendant's conduct in obtaining background checks on applicants without using a stand-alone authorizing document that complies with the FCRA and accompanying state laws. The settlement is for $2.3 million for a class of approximately 44,100 class members. Class members will not need to make a claim but instead will automatically be enrolled in the class unless they choose to opt out. The notice provides an opportunity to opt out or object to the settlement.

Reflecting risks based on the statute of limitations, the distribution provides as follows:

> Defendant potentially has a statute of limitations defense against
> Class Members whose background check Defendant procured or
> caused to be procured before October 17, 2015, which is two years

before Plaintiff filed the Action, the Net Settlement Amount shall be distributed to Class Members as follows:

(a) Sixty percent (60%) of the Net Settlement Amount shall be divided evenly among Class Members on a pro rata basis whose background check Defendant procured or caused to be procured on or after October 17, 2015 through February 14, 2019;

(b) Forty percent (40%) of the Net Settlement Amount shall be divided evenly among Class Members on a pro rata basis whose background check Defendant procured or caused to be procured from October 17, 2012 through October 16, 2015; and

(c) Any payments which are not cashed after one-hundred eighty (180) days following issuance shall be void. Any unclaimed portion of the Net Settlement Amount shall be paid as a *cy pres* award to the Education Fund of the National Association of Consumer Advocates ("NACA Education Fund"), a 501c(3) non-profit organization.

(Settlement ¶ 5.6.)

If the total number of Class Members exceeds 46,000 (roughly 5% more than the approximate class count), then Defendant will supplement the settlement fund by $50. For example, if the total number of Class Members is 46,010, then Defendant will supplement the settlement fund by $500 ($50 x 10 Class Members). The Parties agree that any supplementation of the settlement fund will not increase the potential award of attorney fees to Class Counsel, which is set at a maximum of up to 33 1/3% of $2,300,000.

Mot. at 6.

The Settlement Agreement allows Plaintiff's counsel to seek up to a third of $2,300,000. (Settlement ¶ 5.4.1.) Therefore, Plaintiff's counsel can seek up to $766,666.66 in fees subject to court approval. Plaintiff's counsel is going to seek 25% of the settlement amount. If the escalator clause causes the settlement amount to increase, Plaintiff's counsel will seek up to 25% of the full amount, but not more than $766,666.66, since the settlement provides that is the maximum amount that can be awarded.

*Id.* at 6 n. 1.

## II. DISCUSSION

### A. Legal Standard

"The settlement of a class action must be fair, adequate, and reasonable." *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015) (citing Fed. R. Civ. P. 23(e)(2)). Courts apply "a high procedural standard for settlements that, like the one at issue here, occur without a certified class." *Id.* at 1223. "A difficult balancing act almost always confronts a district court tasked with

approving a class action settlement. On the one hand, we have repeatedly noted that 'there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Id.* (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)). "[O]n the other hand, 'settlement class actions present unique due process concerns for absent class members,' and the district court has a fiduciary duty to look after the interests of those absent class members." *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

B.   Class Certification

Where "a class has not yet been certified in [a] case, before determining the fairness of a class action settlement agreement, the Court must determine whether the settlement class meets the requirements for class certification under Federal Rule of Civil Procedure 23. The Court must first 'ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.'" *In re Uber FCRA Litig.*, No. 14-CV-05200-EMC, 2017 WL 2806698, at *3 (N.D. Cal. June 29, 2017) (*quoting Hanlon*, 150 F.3d at 1019).

1.   Numerosity

The requirement for numerosity is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is clearly met here as there are over 44,000 class members.

2.   Commonality

Class issues are sufficiently common where "there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient." *Hanlon*, 150 F.3d at 1019.

In this case, Plaintiff alleges that all class members' rights were violated because "Delta failed to provide applicants with a stand-alone document that consists solely of the disclosure, as required under the law." Mot. at 2. The Motion for Preliminary Approval defines the common issue as "whether Delta willfully violated the law by using these forms." Mot. at 19. While some

4

United States District Court
Northern District of California

class members may have more specific issues with respect to the statute of limitations, that does not necessarily preclude class certification. *See Yue v. Conseco Life Ins. Co.*, No. CV081506AHMJTLX, 2009 WL 10671418, at *5 (C.D. Cal. Dec. 7, 2009) ("One particular ground on which Defendant objects to class treatment is that individualized discovery will be necessary for each plaintiff to determine when she acquired knowledge of her claims for statute of limitations purposes. However, even in the context of certification of 23(b)(3) classes, which require a more exacting predominance analysis, '[a]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3).'") (quoting *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000)). For these reasons, the requirement of commonality is met.

       3.    <u>Typicality</u>

To meet the requirement for typicality "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. In this case, there is a question of whether Plaintiff is barred by the statute of limitations. Some courts have recognized that there may be an issue of typicality where a party must defend against a statute of limitations defense. *See, e.g., Vizzi v. Mitsubishi Motors N. Am.*, Inc., No. SACV0800650JVSRNBX, 2010 WL 11515266, at *3 (C.D. Cal. Feb. 22, 2010) (Selna, J.); *Plascencia v. Lending 1st Mortg.*, No. C 07-4485 CW, 2012 WL 253319, at *1 (N.D. Cal. Jan. 26, 2012) (Wilken, J.). *But see Johnson v. Arizona Hosp. & Healthcare Ass'n*, No. CV07-1292-PHX-SRB, 2009 WL 5031334, at *4 (D. Ariz. July 14, 2009) (Bolton, J.) ("While a unique defense could defeat class certification on typicality grounds, in this case, the statute of limitations can be equitably tolled if Plaintiffs can establish that Defendants fraudulently concealed their anticompetitive behavior.").

However, in this case, all class members, including the named class representative, will likely face the same challenge with respect to a statute of limitations defense. The Ninth Circuit

has recognized that the statute of limitations for an FCRA claim begins when a person knows that an employer procured a consumer report, not when a plaintiff signs the disclosure. *See Syed v. M-I, LLC*, 853 F.3d 492, 506 (9th Cir.), *cert. denied*, 138 S. Ct. 447 (2017). In this case, it is alleged that Defendant's conduct at issue was uniform, and hence whether Defendant procured consumer reports and when members should have learned of the report is likely to turn on common evidence or patterns of evidence. For this reason, Plaintiff Schofield faces the same challenges as the class members and is therefore typical.

### 4. Adequacy of Representation

The representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. In this case, there is no evidence of any conflicts of interest. While Plaintiff's counsel moved quickly for settlement without attempting to resolve the motion for transfer venue and motion for summary judgment, that may be the result of the general weakness of the case rather than a lack of vigorous representation. For this reason, Plaintiff and his counsel can adequately represent the class.

### 5. Rule 23(b)

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under" Rule 23(b). *Hanlon*, 150 F.3d at 1022. Plaintiff contends that certification is appropriate under Rule 23(b)(3), under which the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); Mot. at 21. The Court agrees.

The first requirement is that "[c]ommon issues predominate over individual issues" meaning "the common issues 'represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *Edwards v. First Am. Corp.*, 798 F.3d

6

1172, 1182 (9th Cir. 2015) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (3d ed. 1998)).  In this case, the common issue of whether Defendant willfully violated the law by using facially inadequate forms predominates over the individual issues; therefore, liability can be determined on a class wide basis.  There is a single common issue which drives the litigation.

The second requirement is that class settlement must be superior to other means of resolution.  Fed. R. Civ. P. 23(b)(3).  In this case, the amount of recovery is quite small and unlikely to be pursued by individuals ($100 to $1000).  Because "litigation costs would dwarf potential recovery", the Court finds that class action and class settlement is the superior means of adjudicating this matter.  *Hanlon*, 150 F.3d at 1022.

### 6. Conclusion

As established, the case meets the requirements for Rule 23(a) and Rule 23(b)(3) certification.  For this reason, the Court **GRANTS** class certification for settlement purposes.

## III. STANDARD OF REVIEW FOR SETTLEMENT APPROVAL

The Federal Rule of Civil Procedure 23(e) provides "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The Ninth Circuit has clarified that "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d at 1100.  In order for a court to approve a settlement, it must determine that the settlement is "fundamentally fair, adequate, and reasonable."  *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008*)*; *see also Bedolla*, 787 F.3d at 1222.  "This inquiry requires that the Court balance factors such as the strength of the plaintiffs' case, the risk and expense of further litigation, the risk of maintaining class action status, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a government participant, and the reaction of the class members of the proposed settlement."  *In re Uber FCRA Litig.*, 2017 WL 2806698, at *4–5 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor

7

to consider is plaintiffs' expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc.*, Case No. 13-cv-4065-VC, 2016 WL 1394236, at *4 (N.D. Cal. Apr. 7, 2016) (internal quotation omitted). Before class certification, "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." *Hanlon*, 150 F.3d at 1026. For this reason, the Ninth Circuit requires that "where . . . the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026). This is to prevent class representatives and their counsel from securing "a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* In this case, class certification has not taken place and therefore the Court must engage in a more exacting scrutiny.

Because the proposed settlement must be closely examined, the Court fully and closely considers all of the applicable factors enumerated in *Hanlon* and *Churchill Village*. *See In re Uber FCRA Litig.*, 2017 WL 2806698, at *4–5 (citing *Hanlon*, 150 F.3d at 1026; *Churchill Vill.*, 361 F.3d at 575). Thus, the Court evaluates "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; [and] (4) the amount offered in settlement." *In re Uber FCRA Litig.*, 2017 WL 2806698, *5 (quoting *Churchill Vill.*, 361 F.3d at 575). *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011). ("At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.").

A.      Adequacy of the Settlement Amount

As explained, the recovery in this case would be $2.3 million dollars for some 44,000 class members. This is a very large discount on a possible recovery of $100 to $1,000 based on

statutory damages.  5 U.S.C. § 1681n(a)(1)(A).  Class members face numerous hurdles should they continue to trial.  For example, there is a question of whether many of the class members would be barred by the statute of limitations.  Furthermore, class members must show Defendant actually procured a report; Defendant denies ordering one for the named Plaintiff.  There are also some unsettled aspects of this area of law, and there are legal issues that present significant risks for class members on the merits of their claims.

Class members may face challenges in litigating the unsettled aspects of law related to their claims.  *See Just v. Target Corp.*, 187 F. Supp. 3d 1064, 1069 (D. Minn. 2016) (Frank, J.) ("First, the federal courts of appeals have provided no guidance as to the parameters of the stand-alone disclosure requirement.  Second, the FTC has issued only informal advisory opinions, and those advisory opinions have identified only one type of provision as specifically prohibited from inclusion in the disclosure document—liability waivers, which the Consent & Disclosure did not include.  Third, the text of the statute itself is less than clear.  The words 'solely' and 'disclosure' may appear unambiguous, and some courts have found that the language of the stand-alone disclosure requirement does not permit more than one interpretation.").

Additionally, as this Court dealt with in *Uber*, class members ability to recover under the FCRA depends on a finding of willfulness.  *In re Uber FCRA Litig.*, 2017 WL 2806698, at *6.  If they cannot show willfulness, they can only receive actual damages which may be as little as none. This too will be quite challenging for class members.  Further, Plaintiff's counsel expressed during the hearing that success on the state law claims would be even more challenging than the FCRA claim.  Plaintiff's counsel acknowledged that under the state law, class members might not be entitled to statutory damages in the class action context.  Actual damages in this context would be very difficult to prove.

Considering these substantial risks and the fact that the parties have avoided great expense by settling this matter early in the process before several timely and expensive motions, the substantial discount appears appropriate.

Furthermore, the parties have negotiated a settlement that is easy for class members.  Class members will not need to make a claim to receive a payment.  Mot. at 7.  Defendant will deposit

9

1   the settlement amount in a fund to be established by a third-party claims administrator.  *Id.*

2   Further, all payments to Class Members will be mailed by the Settlement Administrator by check

3   and delivered using first-class U.S. mail.  There will be no reversion to Defendant.

4       Given the potential vulnerabilities in Plaintiff's case and the ease with which class

5   members will be able to receive their funds, the Court preliminary finds the settlement

6   consideration adequate.

7   B.   <u>Settlement Process</u>

8       In determining preliminary approval, the Court shall also evaluate the means by which

9   settlement was achieved.  "An initial presumption of fairness is usually involved if the settlement

10  is recommended by class counsel after arm's-length bargaining."  *Harris*, 2011 WL 1627973, at

11  *8 (internal quotation omitted); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)

12  ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated

13  resolution").

14      This settlement was the result of arm's length negotiations with a mediator.  This included

15  private mediation and post mediation negotiations.  Mot. at 5 ("The proposed settlement was the

16  culmination of protracted discussions between the parties following a thorough analysis of the

17  pertinent facts and law at issue.  The Parties attended a mediation on August 16, 2018 with

18  mediator Steven Rottman, a well-regarded wage and class hour mediator.  The matter did not

19  settle at mediation.  After continued negotiations, the parties accepted a mediator's proposal,

20  which resulted in the instant settlement.").  "The assistance of an experienced mediator in the

21  settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Exp. Corp.*, No.

22  C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).  For these reasons, the Court

23  finds that the settlement was reached in a procedurally fair manner and not likely the result of

24  collusion.

25  C.   <u>The Presence of Obvious Deficiencies</u>

26      The Court must also note any obvious deficiencies in the settlement.  In this respect, there

27  are three items the Court addresses:  (1) confusion in the notices; (2) the large incentive award for

28  the named Plaintiff; and (3) the request for attorneys' fees.

1. <u>Notices</u>

There is a short form and a long form notice. The short form notice will be mailed to class members' last known addresses, while the long form will be available on the settlement website. The short form notice will have the web address on the post card. Both notices provide adequate information about the Settlement Agreement, who class members can contact, how to access appropriate documents, how to opt out, and how to object. For these reasons, the Court does not find that there is confusion in the notices.

2. <u>Preferential Treatment</u>

The requested class representative award is $10,000. This is quite a lot money in light of the small amount of recovery each individual plaintiff will likely receive.

> It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards. In fact, the Ninth Circuit recently noted that incentive payments to named plaintiffs have become "fairly typical" in class actions. However, while incentive payments have become increasingly common, there is no entitlement to an incentive payment. Rather, "[s]uch awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." When incentive payments are part of a settlement, the court must carefully consider the disparity created by incentive payments to named plaintiffs because "excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion." Particularly, the Ninth Circuit has cautioned that, "if class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard."

> When considering a request for an incentive payment, the court must evaluate each request individually, taking into account the following factors: (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in pursing it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks. Additionally, to ensure that an incentive payment is not excessive, the court must balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment."

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at \*31–32 (N.D.

Cal. Apr. 1, 2011), *supplemented*, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (internal citations omitted). However, "several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *6–7 (N.D. Cal. Feb. 6, 2012) (collecting cases).

The motion in this case provides minimal explanation for this high requested incentive award. However, at this time the request does not warrant denying preliminary approval as the award is still subject to the Court's approval. *Harris*, 2011 WL 1627973, at *9 ("While the Settlement Agreement does authorize Ms. Harris to seek an incentive award of up to $25,000 for her role as named plaintiff in this lawsuit, the Court will ultimately determine whether Ms. Harris is entitled to such an award and the reasonableness of the amount requested. In any event, the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable. Thus, the absence of any preferential treatment supports preliminary approval of the Settlement Agreement.") (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez*, 563 F.3d at 958–69)).

3.    Attorney's Fees

With respect to the requested attorneys' fees, Plaintiff's counsel has represented in the motion that it will request 25%, but in the long form notice it states that "Class Counsel will ask the Court to award attorneys' fees up to 33-1/3% of the Gross Settlement Amount, and reasonable litigation costs." Even if they were to request more than 25% (they have yet to demonstrate a good reason for going above the 25% benchmark), it is not appropriate to deny preliminary approval of a class action settlement because of a request for attorneys' fees – a matter on which the Court will rule in the final approval process.

D.    Procedural Guidance for Class Action Settlements

The Northern District of California has established procedural guidance for class action settlements. Despite the parties' initial failure to address key components of the procedural guidelines, they quickly responded to the Court's request for supplemental briefing with the requisite information. For example, they explained the various bids they received from potential

12

claims administrators and the reason they chose Rust Consulting. Docket No. 42 ("Supp. Brief") at 2. Similarly, Plaintiff's counsel provided the Court with comparable class settlements with class recovery resembling the settlement presented here. *Id.* at 5–6. The parties also provided an explanation of how the *cy pres* recipient relates to the current litigation. Mot. at 8. After providing supplemental briefing, the parties have appropriately addressed the Northern District of California's procedural guidance for class action settlements. The parties' adherence to the guidance has been instrumental in the Court granting preliminary approval of this class action settlement. The Court reminds the parties to consult the final approval guidance prior to filing their motion for final approval.

## IV.    CONCLUSION

The Court, having fully reviewed Plaintiff's Motion for Preliminary Approval of Class Action Settlement, and the supporting Memorandum of Points and Authorities and Declarations, including the Joint Stipulation of Class Action Settlement ("Settlement Agreement") and Notice of Settlement ("Notice"), and for good cause appearing, orders the following:

1.    The Court grants preliminary approval of the settlement based upon the terms set forth in the Settlement Agreement, which is attached as Exhibit 3 to the Declaration of Shaun Setareh, and is incorporated in full by this reference and made a part of this Order. The Settlement appears to be fair, adequate, and reasonable to the Class.

2.    All capitalized terms defined in the Settlement Agreement shall have the same meaning when used in this Order.

3.    The Settlement falls within the range of reasonableness of a settlement (even under heightened scrutiny) which could ultimately be given final approval by this Court, and appears to be presumptively valid, subject only to any objections that may be raised at the Final Approval Hearing and final approval by this Court. The Court notes that Defendant has agreed to create a common fund of $2,300,000 to cover (a) settlement payments to Class Members who do not validly opt out; (b) Class Representative service payment of up to $10,000 for Class Representative Joseph Schofield; (c) Class Counsel's attorneys' fees, not to exceed 33-1/3% of the Gross Settlement Amount (Class Counsel is requesting attorney fees in the amount of 25% of the

United States District Court
Northern District of California

1    Gross Settlement Amount), (d) actual litigation expenses incurred by Class Counsel; and (e)

2    reasonable Settlement Administration Costs (estimated to be approximately $70,000).

3         4.    The Court finds and concludes that the Settlement is the result of arms-length

4    negotiations between the parties conducted after Class Counsel had adequately investigated

5    Plaintiff's claims and become familiar with their strengths and weaknesses.  The assistance of an

6    experienced mediator in the settlement process further confirms that the Settlement is non-

7    collusive.

8         5.    In accordance with the Settlement Agreement, the Court hereby certifies the

9    following class for purposes of settlement:  All persons in the United States who applied for

10   employment with Delta and were the subject of a consumer report that was procured by Delta or

11   caused to be procured by Delta at any time from October 17, 2012, through February 14, 2019.

12   The Court hereby finds and concludes that the Settlement Class satisfies all of the requirements for

13   certification under Fed. R. Civ. P. 23(a) and 23(b)(3), except manageability.  Because certification

14   of the Class is proposed in the context of a settlement, the Court need not inquire whether the case,

15   if tried as a class action, would present intractable management problems.

16        6.    With respect to the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), the Court

17   makes the following findings:  (a) the Class, which has approximately 44,100 members, satisfies

18   the standard for numerosity in Fed. R. Civ. P. 23(a)(1); (b) there are many questions of fact and

19   law that are common to the Class regarding Defendant's background check policies and practices

20   that applied to Class Members, thereby satisfying the standard for commonality in Fed. R. Civ. P.

21   23(a)(2); (c) Plaintiff's claims meet the typicality requirement because Plaintiff applied for

22   employment with Delta and was the subject of a consumer report that was procured by Delta or

23   caused to be procured by Delta; (d) the Court finds that Setareh Law Group will fairly and

24   adequately represent the Class, and appoints Setareh Law Group as Class Counsel; (e) the Court

25   finds that Plaintiff Joseph Schofield will fairly and adequately represent the Class, and appoints

26   him as Class Representative; and (f) the Court finds that for purposes of settlement only, common

27   questions of law and fact predominate over individualized issues and further finds that the

28   superiority requirement is satisfied because it is likely that recovery on an individual basis would

14

be dwarfed by the cost of litigating on an individual basis.

7. The Court approves Rust Consulting ("Settlement Administrator") to perform the duties of the Settlement Administrator as set forth in this Order and the Settlement Agreement.

8. The Court finds that the Notice of Settlement, which is attached as Exhibit A to the Settlement Agreement comports with Fed. R. Civ. P. 23 and all constitutional requirements including those of due process. The Court further finds that the Notice adequately advises the Class about the class action; the terms of the proposed settlement, the benefits available to each Class Member, and the proposed fees and costs to Class Counsel; each Class Member's right to object or opt out of the settlement, and the timing and procedures for doing so; preliminary Court approval of the proposed settlement; and the date of the Final Approval hearing as well as the rights of Class Members to file documentation in support of or in opposition to and appear in connection with said hearing. The Court further finds that the mailing of the Notice to each Class Member's last known address, with appropriate skip tracing and mail forwarding for Notices returned as undeliverable, as specifically described in the Settlement Agreement, constitutes reasonable notice to Class Members of their rights with respect to the class action and proposed settlement.

9. Within thirty (30) days of the issuance of this Order, Delta shall provide the Settlement Administrator with the Class Member Database, as specified in the Settlement Agreement.

10. Within fourteen (14) days after receipt of the Database, the Settlement Administrator shall mail the Notice in the manner specified in the Settlement Agreement.

11. The Court orders that any request for exclusion from the Settlement must be postmarked no later than forty-five (45) days after the Notice is initially mailed to Class Members, and must be received by the Settlement Administrator to be valid.

12. If more than 5% of the total number of Class Members submit timely and valid opt-out requests, Delta shall have the option to void the settlement. To exercise this option, Defendant's Counsel must send written notification to Class Counsel within fourteen (14) days of receiving a report from the Settlement Administrator of the total number of timely and valid opt-

out requests received from Class Members.

13.     Any Class Member who does not timely and validly request exclusion from the settlement may object to the Settlement Agreement.  Any objection must be in writing, and must be mailed to the Settlement Administrator.  Such objection shall include the name and address of the Class Member and the basis of the objection, and must be signed by the Class Member.  To be timely, the objection must be postmarked no later than forty-five (45) days after the Notice is initially mailed to the Class.  Any Class Member who does not timely submit such a written objection will not be permitted to raise such objection, except for good cause shown, and any Class Member who fails to object in the manner prescribed by this Order will be deemed to have waived, and will be foreclosed from raising, any such objection.

14.     The Final Approval Hearing shall be held before this Court on July 11, 2019 at 1:30 p.m. in Courtroom 5, to consider the fairness, adequacy, and reasonableness of the proposed settlement preliminarily approved by this Order, and to consider the motion of Class Counsel for an award of reasonable attorneys' fees and costs and Class Representative service payment.

15.     Any party to this case, including any Class Member, may be heard in person or by counsel, to the extent allowed by the Court, in support of, or in opposition to, the Court's determination of the good faith, fairness, reasonableness, and adequacy of the proposed settlement, the requested attorneys' fees and costs, the requested Class Representative service payment, and any order of final approval and Judgment regarding such settlement, fees, costs, and payment; provided however, that no person shall be heard in opposition to such matters unless such person has complied with the conditions set forth in the Notice.

///
///
///
///
///
///
///

16.     Briefs regarding the settlement shall be served and filed in accordance with the following briefing schedule:

| | |
|---|---|
| Plaintiff's motion for attorneys' fees and costs | 14 days before the deadline for Class Members to submit objections to the settlement |
| Plaintiff's motion for final approval of the settlement and for Class Representative service payment | 28 days before the Final Approval Hearing |
| Defendant's Counsel shall file with the Court a declaration attesting that CAFA Notice has properly been served pursuant to 28 U.S.C. §1715 | 14 days before the Final Approval hearing |
| Reply briefs, if any | 14 days before the Final Approval Hearing |

17.     The Court orders that if for any reason the Court does not execute and file an order of final approval and judgment, or if such a final approval order is reversed, the Settlement Agreement and the proposed settlement which is the subject of this Order and all evidence and proceedings had in connection therewith, shall be without prejudice to the status quo ante rights of the Parties to the litigation as more specifically set forth in the Settlement Agreement.

18.     The Court orders that the Settlement Agreement shall not be construed as an admission or evidence of liability.

19.     Pending further order of this Court, all proceedings in this matter except those contemplated herein and in the Settlement Agreement are stayed.

20.     The Court expressly reserves the right to adjourn or continue the Final Approval

Hearing without further notice to Class Members.

This order disposes of Docket No. 40.

**IT IS SO ORDERED**.

Dated: February 27, 2019

_____
EDWARD M. CHEN
United States District Judge