Shaun Setareh (SBN 204514)
        shaun@setarehlaw.com
Thomas Segal (SBN 222791)
        thomas@setarehlaw.com
Farrah Grant (SBN 293898)
        farrah@setarehlaw.com
**SETAREH LAW GROUP**
315 S. Beverly Drive, Ste. 315
Beverly Hills, California 90212
Tel:    (310) 888-7771
Fax:    (310) 888-0109

Attorneys for Plaintiff,
JOSEPH L. SCHOFIELD

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH L. SCHOFIELD, on behalf of himself, all others similarly situated,<br><br>              Plaintiff,<br><br>     vs.<br><br>DELTA AIR LINES, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>             Defendants. | Case No. 3:18-cv-00382-EMC<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; FOR AN AWARD OF ATTORNEY FEES AND EXPENSES, SETTLEMENT ADMINISTRATOR PAYMENT AND INCENTIVE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>***Hearing Information***<br>Date:         July 11, 2019<br>Time:        1:30 p.m.<br>Courtroom:    5<br>Judge:       Hon. Edward M. Chen<br><br>***Submitted Under Separate Cover***<br>  1.  Declaration of Shaun Setareh;<br>  2.  Declaration of Joseph Schofield;<br>  3.  Declaration of Amanda Myette;<br>  4.  [Proposed] Order |

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE on July 11, 2019 at 1:30 p.m., in Courtroom 5 of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Edward M. Chen presiding, Plaintiff Joseph Schofield ("Plaintiff"), on behalf of himself and all others similarly situated, will, and hereby does, move this Court to:

(1) Finally approve the Settlement;

(2) Finally approve certification of the Settlement Class;

(3)  Award attorney fees in the amount of $575,000 (25% of the Settlement Amount);

(4) Award litigation expenses in the amount of $13,790.46;

(5)  Award Settlement Administrator expenses in the amount of $70,000;

(6)  Award Plaintiff Joseph Schofield an incentive award in the amount of $10,000.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of  Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Shaun Setareh; (4) the Settlement Agreement; (5) the Notice of Class Action Settlement, including Postcard Notice; (6) the [Proposed] Order (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Respectfully submitted,

Dated:  May 24, 2019                    SETAREH LAW GROUP

BY   /s/ Shaun Setareh
    Shaun Setareh
    Attorneys for Plaintiff
    JOSEPH SCHOFIELD

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................................1

II. BACKGROUND ........................................................................................................................2

    A. Summary of Relevant Law ...............................................................................................2

        1. The Fair Credit Reporting Act ("FCRA")...............................................................2

        2. The Ninth Circuit's Landmark *Syed* Decision.......................................................3

        3. The Investigative Consumer Reporting Agencies Act............................................4

    B. Overview of the Litigation ...............................................................................................4

    C. The Disclosure Forms at Issue .........................................................................................5

    D. Motion to Transfer ...........................................................................................................5

    E. Motion for Summary Judgment........................................................................................5

    F. Plaintiff's Investigation and Discovery ............................................................................6

    G. The Parties Engaged in Mediation and Arm's- Length Settlement Negotiations ...........6

    H. Material Terms of the Proposed Class Action Settlement ................................................7

        1. The Settlement Class.................................................................................................7

        2. The Settlement Benefits............................................................................................7

        3. A Narrow Release ....................................................................................................7

        4. A Consumer-Friendly Claims Process.....................................................................8

        5. Notice to the Settlement Class and the Class Response ....................................8

        6. The Reversion to Defendant ....................................................................................9

III. ARGUMENT .........................................................................................................................9

    A. The Court Should Grant Final Approval of the Class Settlement....................................9

        1. The Standard For Final Approval Has Been Met ................................................9

        2. The Settlement Is Reasonable In Light of the Strengths and Weaknesses of

            Plaintiff's Case.................................................................................................10

        3. The Risk, Expense and Complexity of the Case, Including the Risk of

            Decertification, Favor Approval of the Settlement...........................................13

        4. The Amount Offered in Settlement Supports Approval ...................................14

5. The Settlement Was Finalized After a Thorough Investigation ........................16

6. The Views of Experienced Counsel Should Be Accorded

Substantial Weight. ...........................................................................................17

7. The Presence or Absence of a Governmental Participant...................................18

8. The Reaction of the Class is Overwhelming Positive.........................................18

B. Class Certification Is Appropriate for Settlement Purposes.........................................18

C. The Court Should Award The Requested Attorney Fees, Expenses, Settlement

Administrator Expense and Class Representative Service Award ...................................19

1.  The Requested Fee Award Is Reasonable.........................................................19

a. Applicable Law Regarding Attorneys' Fees ......................................................19

b. Class Counsel Provided High Quality Representation that Supports the

Requested Fee Award .........................................................................................20

c. The Settlement Provides Benefit to the Class and Supports the Requested Fee

Award....................................................................................................................21

d. The Complexity of the Issue Supports the Fee Award .....................................21

e. The Risk of Nonpayment Supports the Requested Fee Award..........................21

f. The Contingent Nature of the Settlement Supports the Fee Award ..................22

g. The Reaction of the Settlement Class Supports the Fee Award ........................22

h. A Lodestar Analysis Also Supports The Requested Fee ...................................22

2. Plaintiff's Litigation Expenses Should be Reimbursed..............................................24

3. The Settlement Administrator's Expense Should Be Approved ...............................25

4. The Court Should Approve An Incentive Award .....................................................25

IV. CONCLUSION................................................................................................................25

*Schofield v. Delta Air Lines, Inc.*

Notice of Motion and Motion for Final Approval
of Class Action Settlement

## **TABLE OF AUTHORITIES**

**Cases**

*Aceves v. AutoZone Inc.*, Case No. 5:14-CV-02032, ECF No. 58 (C.D. Cal. Nov. 18, 2016) ..... 15

*Bassett v. ABM Parking Services, Inc.,* 883 F.3d 776, 778 (9th Cir. 2018) .................................. 14

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010) ..................................... 13

*Beaver v. Tarsadia Hotels,* No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *13 (S.D. Cal. Sept. 28, 2017) ......................................................................................................................... 22

*Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245, 264 (N.D. Cal. 2014) ............................. 24

*Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) ........................................................................................................................... 22

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) ................................................ 16

*Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ............................................ 10

*City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) .............................................................. 20

*Cotter v. Lyft, Inc.,* 193 F.Supp.3d 1030, 1035 (N.D. Cal. 2016) ............................................... 10

*Deaver v. Compass Bank*, No. 13-cv-222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015) ......................................................................................................................................... 22

*Di Giacomo v. Plains All Am. Pipeline, Nos.* 99–4137 & 99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) ............................................................................................. 24

*Eisen v. Porsche Cars North American, Inc.*, Case No. 11- 09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006 ...................................................................................................... 16, 18

*Feist v. Petco Animal Supplies, Inc.,* Case No. 3:16-cv-01369-H-DHB ECF No. 48 (S.D. Cal. 2018) ......................................................................................................................................... 15

*Frank v. Estman Kodak Co.*, 288 F.R.D. 174, 186 (W.D.N.Y. 2005) ........................................ 16

*Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989) ........................................................... 9

*Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (C.A.9 (Cal.), 2019) .. 4, 12, 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). .................................................. 9

*Holloway v. Best Buy Co*., C-05-5056-PJH (MEJ) (N.D. Cal.) .................................................. 23

Notice of Motion and Motion for Final Approval
of Class Action Settlement

*Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786- LHK, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6, 2013) .................................................................................................................. 24

*In re Apple Inc. Secs. Litig.*, No. 5:06-CV-05208, 2011 U.S. Dist. LEXIS 52685, at *16 (N.D. Cal. May 17, 2011) ............................................................................................................. 23

*In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134–35 (D.N.J. 2002)................................. 24

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011.)........................ 19

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, No. C 10-02124 SI, 2014 WL 186375, at *2 (N.D. Cal. Jan. 16, 2014) .................................................... 23

*In re Heritage Bond Litig.*, 2005 WL 1594389, at *15 ............................................................... 22

*In re HP Laser Printer Litig.*, 2011 WL 3861703 at 5–6 (C.D. Cal. filed Aug. 31, 2011) .......... 23

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ................................................ 17

*In re Portal Software Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007) ................................................................................................... 14

*In re TFT-LCD (Flat Panel) Antitrust Litig., 2013 WL 1365900,* at *8 ...................................... 24

*In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) ......................................................................... 12, 13, 16

*In re Uber FCRA Litigation*, 2017 WL 2806698 (N.D. Cal. 2017)..................................... 1, 15, 21

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299 ...................................... 22

*Johnson v. General Mills, Inc.*, 2013 WL 3213832 *6 (C.D. Cal. 2013.) ................................... 25

*Kearney v. American Honda Motor Am.* 2013 U.S. Dist. LEXIS 91636  *24 ........................... 23

*Lane v. Facebook, Inc.*, No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) ........................................................................................................................ 14

*LDK Solar Secs. Litig.*, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010) ............................ 16

*Leland v. Lagos Stanford Junior University*, 2017 WL 113302 *4 (N.D. Cal. 2017.)................. 15

*Lewis v. Southwest Airlines*, 2018 WL 400775 (N.D. Tex. January 11, 2018) ........................... 12

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ..................................... 16

*London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003).............................. 13

*Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371(3d Cir. 2012)....................................................... 11

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) ......................... 24

*Mathein v. Pier 1 Imports (U.S.) Inc.,* 2018 WL 1993727 *8 (E.D. Cal. April 27, 2018) .......... 18

*Miller v. CEVA Logistics USA Inc.*, 2015 WL 729638, *7 (N.D. Cal. 2015)............................. 14

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004). 10, 16

*Nesbitt v. Postmates, Inc.*, San Francisco Superior Court Case No. CGC-15-547146................ 15

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982) ......................... 10

*Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir. 1989)............................ 19

*Perfect 10 v. Giganews Inc.,* 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. 2015) .......................... 23

*Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012) ................... 23

*Pokorny,* 2013 WL 3790896, at *2 (multiplier of 2.2) .............................................................. 24

*Portal Software Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D.

Cal. Nov. 26, 2007)................................................................................................................... 14

*Rodriguez v. West Pub. Corp.,* 563 F.3d 948, 965 (9th Cir. 2009)..................................... 10, 14

*Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017) ...................................... 1, 15, 21

*Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57-59 (2007) ....................................................... 11

*Serna v. Big A Drug Stores, Inc.*, No. 07-0276 CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D.

Cal. Oct. 9, 2007)...................................................................................................................... 13

*Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) ........................................ 11

*Sobel v. Hertz Corp.*, No. 306-CV-00545-LRH-RAM, 2014 WL 5063397, at *10.................... 24

*Soman v. Alameda Health Sys.*, No. 17-cv-06076-JD, 2018 WL 6308185, at *3 (N.D. Cal. Dec.

3, 2018) ..................................................................................................................................... 11

*Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003.) .......................................................... 19

*Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. 2015)

..................................................................................................................................................... 16

*Stuart v. RadioShack Corp.*, No. C-07-4499, 2010 U.S. Dist. LEXIS 92067, at *16 (N.D. Cal.

Aug. 9, 2010) ............................................................................................................................. 23

*Syed v. M-I LLC*, 852 F.3d 492, 496 (9th Cir. March 20, 2017.).........................................3, 11

Notice of Motion and Motion for Final Approval
of Class Action Settlement

*Torres v. Pet Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015) ............................................................................................................................. 12

*Troester v. Starbucks Corp.*, 5 Cal.5th 829 (Cal., 2018) ............................................. 17

*Trs. Of the Constr. Indus and Laborers Health and Welfare Trust v. Redland Ins. Co*., 460 F.3d 1253, 1258 (9th Cir. 2006.) ............................................................................... 24

*Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 489 (E.D. Cal. 2010) ............................ 14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *In re Bluetooth*, 654 F.3d at 942 ................................................................................................................................. 19

*Wang v. Chinese Daily News, Inc.,* 2008 U.S. Dist. LEXIS 123824 at 8–9 (C.D. Cal. filed Oct. 3, 2008) ............................................................................................................................. 23

*Willes v State Farm Fire & Cas. Co*., 512 F.3d 565, 566 (9th Cir. 2008) .................................. 11

**Statutes**

28 U.S.C. § 140(a) ......................................................................................................... 5

California Civil Code § 1786.16(2)(B). ......................................................................... 4

California Civil Code § 1786.2(c.) ................................................................................. 4

*Schofield v. Delta Air Lines, Inc.*                    Notice of Motion and Motion for Final Approval
of Class Action Settlement

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The settlement provides substantial relief in the form of $2,300,000 on a non-reversionary basis for Defendant's failure to satisfy various State and Federal statutes pertaining to pre-employment background checks performed on the Settlement Class.  No Settlement Class Members will have to make claims.  Instead, checks will be mailed directly to them .[1]

Plaintiff's counsel, who vigorously prosecuted these claims, are experienced in this field and obtained a very favorable recovery on this case for the class, are seeking $575,000, in fees which represents the 9th Circuit's benchmark of 25% of the recovery; along with costs in the amount of $13,790.46.

This lawsuit asserts that Delta Airlines, Inc. ("Delta"  or "Defendant")  violated the Fair Credit Reporting Act ("FCRA") and related California law claims. Plaintiff alleges that Defendant failed to provide applicants with a stand-alone document that consists *solely* of the disclosure, as required under State and Federal law. Instead, Plaintiff alleges that the disclosure forms used included impermissible extraneous information.

This Court granted preliminary approval to the settlement of this action on February 27, 2019. (ECF No. 44.) Notice has gone out to the class by First Class Mail. To date there are zero objections and only fourteen requests for exclusion.

In an FCRA case, a prevailing plaintiff will receive statutory damages of between $100 and $1,000. 15 U.S.C. § 1681n(a)(1)(A.) The settlement amount of $2,300,000 is a good result for the class. In this settlement the gross amount per class member is $57.43 ($2,300,000/ 40,042). This compares favorably to other recent FCRA settlements in the Northern District. For example, in two recent FCRA settlements in the Northern District (involving similar allegations of defective FCRA disclosure forms) the gross settlement amount(s) per class member were $3.30 per class member in one case and $7.31 per class member in the other.

---

[1] The Court set a date of June 13, 2019 for filing the final approval motion. However, since some case law suggests that the attorney fee motion should be filed before the objection deadline, Plaintiff is filing the attorney fee motion and final approval motion now. Plaintiff will file a supplemental declaration before the hearing providing the final number of objections and requests for exclusion, and will address objections if any are filed.

*Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final approval); *In re Uber FCRA Litigation*, 2017 WL 2806698 (N.D. Cal. 2017)(granting preliminary approval).

The Settlement not only was negotiated with an experienced mediator, it was entered into with the parties fully cognizant of the risks of the case. Defendant's Motion for Summary Judgment and Motion to Transfer were some of the risks that Plaintiff took into account when settling this case.

The settlement is an excellent result. The underlying legal claims under the FCRA involve substantial risk because of the uncertain and evolving legal landscape regarding such claims. Class counsel has obtained a certain recovery for the class in face of great risk and uncertainty.

Any residue from uncashed checks will go to the *cy pres* recipient, the Education Fund of the National Association of Consumer Advocates ("NACA Education Fund").

Plaintiff requests that the Court approve an award of attorney fees in the amount of $575,000 which is 25% of the $2,300,000 Settlement Fund. Plaintiff also requests that the Court approve litigation expenses in the amount of $13,790.46. Plaintiff also requests that the Court approve the Settlement Administrator's expenses in the amount of $70,000, and an incentive award in the amount of $10,000. In light of the risks of continuing with this litigation, Plaintiff submits that this settlement, which guarantees that all Settlement Class Members will be paid, is fair, reasonable, and adequate and should be approved.

## II.    BACKGROUND

### A.  Summary of Relevant Law

#### 1.       The Fair Credit Reporting Act ("FCRA")

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b), requires employers to use certain documents and to follow specified policies and practices when they use "consumer reports" to assess the qualifications of prospective and current employees.

Pursuant to section 1681b of the FCRA, no person can obtain a consumer report for employment purposes without providing a "clear and conspicuous disclosure . . .in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i.) The person obtaining the

consumer report must also obtain the consumer's written authorization which can be done as part of the disclosure form. 15 U.S.C. § 1681b(b)(2)(A)(ii.)  A plaintiff may be entitled to statutory and punitive damages when a defendant has willfully violated the provisions of the FCRA. 15 U.S.C. § 1681n(a)(1)(A): "any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . damages of not less than $100 and not more than $1000 . . . such amount of punitive damages as the court may allow."

### 2.    The Ninth Circuit's Landmark *Syed* Decision

In 2017, the Ninth Circuit issued a major decision on the issue of violation of the stand-alone disclosure requirement of the FCRA. *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017.)  In *Syed*, the FCRA disclosure contained a term purporting to waive any liability of the employer related to the background check. *Id*. at 498. The Ninth Circuit held that under the plain language of the FCRA that the required disclosure must be in "a document that consists solely of the disclosure," the inclusion of the liability release was impermissible: "We must begin with the text of the statute. Where congressional intent has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive . . . . The ordinary meaning of 'solely' is '[a]lone; singly' or entirely exclusively." *Id*. at 500. The Ninth Circuit also held that due to the clarity of the statutory language requiring that the disclosure be in a document consisting "solely" of the disclosure, "a prospective employer's violation of the FCRA is "willful" when the employer includes terms in addition to the disclosure." *Id*. at 496.

While *Syed* involved a liability release, its holding is broader. *Syed* broadly analyzed the "solely" requirement governing the disclosure apart from any release language:

> "It is our duty to give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (internal quotation marks omitted). M-I's interpretation fails to give effect to the term "solely," violating the precept that "statutes should not be construed to make surplusage of any provision." *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 804 (9th Cir. 1989) (alterations and internal quotation marks omitted). ***That other FCRA provisions mandating disclosure omit the term "solely" is further evidence that Congress intended that term to***

---

*Schofield v. Delta Air Lines, Inc.*                           Notice of Motion and Motion for Final Approval
                                                               of Class Action Settlement

**carry meaning in 15 U.S.C. § 1681b(b)(2)(A)(i).** *See* 15 U.S.C. §§ 1681d, 1681s-3.

*Syed*, 853 F.3d at 501 (emphasis added).

Put in simplest terms, "solely" means just what it appears to mean and, in Plaintiff's view, *no* implied exceptions to the "solely" requirement should be judicially added to the *one* express exception allowing the authorization to accompany the correct disclosure. The FCRA expressly states that the *sole* additional element that may be included with the disclosure is an authorization, "which authorization may be made on the document referred to in clause (i). . . ." 15 U.S.C.A. § 1681b(b)(2)(A)(ii).

On January 29, 2019, the United States Court of Appeals for the Ninth Circuit found that a background check document similar to the ones here did not comply with the standalone document requirement in FCRA and ICRAA, and was not clear. *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (C.A.9 (Cal.), 2019).[2] The form in *Gilberg* included references to state rights, like the forms here.

### 3.     The Investigative Consumer Reporting Agencies Act

Plaintiff also asserts a cause of action under California's Investigative Consumer Reporting Agencies Act. (ICRAA California Civil Code § 1786 *et seq.*) Under the ICRAA, an "'investigative consumer report' means a report in which information on a consumer's character, general reputation, personal characteristics or mode of living is obtained through any means." California Civil Code § 1786.2(c.) When an employer obtains an investigative consumer report, the employer must provide "a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure." California Civil Code § 1786.16(2)(B.)

### B.  Overview of the Litigation

On October 17, 2017, Plaintiff filed a class action lawsuit alleging violation of the FCRA, ICRAA, the Consumer Credit Reporting Agencies Act ("CCRAA") and the Business and Professions Code in San Francisco Superior Court. On January 17, 2018, Defendant removed the case to the United States District Court for the Northern District of California. The

---

[2] Setareh Law Group is lead counsel in *Gilberg v. California Check Cashing Stores, Inc.*

lawsuit alleges that the forms used by Delta to disclose pre-employment background checks do not comply with the requirements of the FCRA, ICRAA and CCRAA. Specifically, Plaintiff alleges that Delta violated the FCRA requirement that the disclosure form convey the employer's intent to obtain a credit report or background check on a current or prospective employee. Plaintiff further alleges that Delta violated the above statutes' requirement that the disclosure form be clear and conspicuous and consist solely of the disclosure. As such, Plaintiff contends that Delta failed to provide applicants with a stand-alone document that consists *solely* of the disclosure, as required under the law. Plaintiff's position is that the disclosure forms include impermissible extraneous information, in direct contravention of the FCRA.

### C.  The Disclosure Forms at Issue

The disclosure forms at issue and why Plaintiff believes they violate the standalone disclosure requirement were discussed at length in the motion for preliminary approval. (ECF No. 40 at 2:20-4:3.) The forms contain various types of extraneous information including information about state law rights and medical information.

### D.  Motion to Transfer

Delta filed a motion to transfer venue under 28 U.S.C. § 140(a) on August 15, 2018. (ECF No. 19). Defendant requested that the matter be transfer from this Court to the United States District Court for the Northern District of Georgia arguing that litigating this action in the Northern District of Georgia is more convenient for the parties and the witnesses and furthers the interest of justice.  Defendant withdrew their motion to transfer prior to Plaintiff filing an opposition, due to the parties' agreement to settle. If not for the settlement, Plaintiff would have vigorously opposed the motion to transfer.

### E.  Motion for Summary Judgment

Delta filed a motion for summary judgment on August 15, 2018. (ECF No. 23.) The motion for summary judgment argued that: (1) Schofield's first through fourth claims for relief are barred by the applicable statutes of limitations under the FCRA, the ICRAA, and the CCRAA; (2) Schofield's third claim for relief under the ICRAA further fails because he has not suffered any actual damages and statutory damages are unavailable in class actions under

the ICRAA; (3) Schofield's fourth claim for relief under the CCRAA further fails because Delta did not procure or cause to be procured a consumer credit report on Schofield; and (4) Schofield's fifth claim for relief under California's Unfair Competition Law ("UCL") fails because he does not seek restitution or have standing to pursue injunctive relief—the only available remedies under the UCL. Defendant withdrew their motion for summary judgment prior to Plaintiff filing an opposition, due to the parties' agreement to settle. If not for the settlement, Plaintiff would have vigorously opposed the motion for summary judgment.

**F. Plaintiff's Investigation and Discovery**

Prior to filing of this action, Plaintiff thoroughly investigated his claims.  Plaintiff also conducted investigation and discovery after filing the action in order to prove up his claims and rebut Delta's defenses.

Plaintiff alleges that Delta routinely procures credit and background reports to investigate current and former employees, including Plaintiff, and uses the information from these reports in connection with its hiring process without providing the legally required stand alone disclosures. As part of the investigation, Plaintiff's counsel reviewed many documents produced by Delta in order to confirm which forms were used and by whom during the class period.  Plaintiff's counsel also reviewed Delta's background check policies, record retention policies, and the actual background check disclosure and authorization forms for those who applied for employment at Delta during the class period. (Setareh Decl. ¶ 5.)  Because this case turns on Delta's legal defense that Delta's noncompliance was purportedly not "willful" under the FCRA, Plaintiff's counsel thoroughly analyzed the evolving, and often conflicting case law governing FCRA class actions, as well as law governing related statutes such as FACTA. All of this review and investigation allowed Plaintiff's counsel to structure a settlement that provides benefits directly to the persons who were required to use the allegedly improper forms. (*Id.* ¶ 6.)

**G. The Parties Engaged in Mediation and Arm's-Length Settlement Negotiations**

The proposed Settlement was the culmination of protracted discussions between the parties following a thorough analysis of the pertinent facts and law at issue. The Parties attended a mediation on August 16, 2018 with mediator Steven Rottman, a well-regarded wage and class

hour mediator.  The matter did not settle at mediation. After continued negotiations, the parties

accepted a mediator's proposal, which resulted in the instant settlement. (Setareh Decl. ¶ 8.)

### H.   Material Terms of the Proposed Class Action Settlement

#### 1.   The Settlement Class

Settlement Class Members consist of all persons in the United States who applied for

employment with Delta Air Lines, Inc. and were the subject of a consumer report that was

procured by Delta or caused to be procured by Delta at any time from October 17, 2012,

through February 14, 2019. (Settlement, ¶ 2.3.) There are 40,042 class members. (Declaration of

Amanda Myette ("Myette Decl."), ¶ 8.)

#### 2.   The Settlement Benefits

Under the Settlement, all Settlement Class Members who do not submit valid and timely

Requests for Exclusion will receive settlement cash payment. In recognition of the fact that

Defendant potentially has a statute of limitations defense against Class Members whose

background check Defendant procured or caused to be procured before October 17, 2015, which

is two years before Plaintiff filed the Action, the Net Settlement Amount shall be distributed to

Class Members as stated in ¶ 5.6 of the Settlement:

> (a)   Sixty percent (60%) of the Net Settlement Amount shall be divided evenly among Class Members on a pro rata basis whose background check Defendant procured or caused to be procured on or after October 17, 2015 through February 14, 2019;

> (b)   Forty percent (40%) of the Net Settlement Amount shall be divided evenly among Class Members on a pro rata basis whose background check Defendant procured or caused to be procured from October 17, 2012 through October 16, 2015; and

> (c)   Any payments which are not cashed after one-hundred eighty (180) days following issuance shall be void.  Any unclaimed portion of the Net Settlement Amount shall be paid as a *cy pres* award to the Education Fund of the National Association of Consumer Advocates ("NACA Education Fund"), a 501c(3) non-profit organization.

#### 3. A Narrow Release

In exchange for the benefits and for other good and valuable consideration,

Settlement Class Members who have not timely and properly opted out of the settlement will

release Delta for:

"claims that were pled or could have been pled based on the factual allegations contained in the Complaint and covers the period from October 17, 2012, through February 14, 2019, including, without limitation, any claims, actions, causes of action, demands, damages, losses, or remedies, whether based upon federal, state, or local statutes or federal, state, or local common law, relating to, based upon, resulting from, or arising out of the alleged violations of the Fair Credit Reporting Act, including but not limited to 15 U.S.C. § 1681b(b)(2)(A), (d)(a)(1) and (g)(c), Investigative Consumer Reporting Agencies Act (California Civil Code §§ 1786 *et seq.*), Consumer Credit Reporting Agencies Act (California Civil Code §§ 1785 *et seq.*), California Business & Professions Code §§ 17200, *et seq.*, or any other federal, state or local law governing the procurement or use of background/credit checks, including laws regarding background check disclosures and authorizations and pre-adverse and adverse action notices, other penalties, related tort, contract, and punitive damages claims, claims for interest, attorneys' fees, litigation and other costs, expenses, restitution, and equitable and declaratory relief.  Plaintiff and each settlement Class Member shall further automatically be deemed to have waived and released any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code with respect to the released claims which arise from the subject of this Settlement, including any and all claims under the Fair Credit Reporting Act and any similar state or local claims, including those regarding an allegedly inadequate or otherwise improper disclosure about the procurement or use of consumer reports for employment purposes or pre-adverse and adverse action notices." (Settlement ¶ 2.28.)

This release is narrowly and appropriately tailored to the allegations asserted by Plaintiff in this Complaint. In addition, Plaintiff Schofield will execute a general release of claims, releasing any known or unknown claims he may have had against Delta.

### 4. A Consumer- Friendly Claims Process

The parties have negotiated a mailing procedure to minimize the burden to the Settlement Class. No class members will need to make a claim in order to receive a payment. Within 15 days after the date the court enters the Order of Final Approval of the class settlement, Defendant will deposit the Gross Settlement Amount into a settlement fund established by the third-party claims administrator for the purposes of administering the settlement. All payments to Settlement Class will be delivered by first-class U.S. mail.

### 5. Notice to the Settlement Class and the Class Response

On April 26, 2019 the Settlement Administrator mailed notice to the Settlement Class Members. (Myette Decl. ¶ 10.) To date, fourteen Class Members have opted out of the litigation and there have been zero objections. (*Id.* ¶¶ 13-14.)

### 6.  No Reversion to Defendant

No money will revert to the Defendant. Any residue from uncashed settlement checks will go to a *cy pres* recipient, proposed to be the NACA Education Fund. The Education Fund focuses on the fostering justice for consumers, promoting consumer legal rights, educating the public about relevant issues, encouraging communication between consumers, consumer advocates and consumer attorneys, and engaging in activities that describe and expose unfair business practices that harm consumers.  https://www.consumeradvocates.org/about-naca.  As such, the Education Fund has a direct connection to Plaintiff's claims in this case.

## III.  ARGUMENT

### A.  The Court Should Grant Final Approval of the Class Settlement
#### 1. The Standard for Final Approval Has Been Met

Class action settlements must be approved by the court, and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). Court approval occurs in three steps: (1) preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to object or exclude themselves from the settlement; and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement. *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

In reviewing class action settlements, the court should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). This reflects the longstanding policy in favor of encouraging settlement of class action suits, as "[l]itigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . .The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

In addition, the Court may consider some or all of the following factors in evaluating the reasonableness of a settlement:

(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in the settlement; (6) the experienced and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Cotter v. Lyft, Inc.,* 193 F.Supp.3d 1030, 1035 (N.D. Cal. 2016). *See Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (citing *Torrisi v. Tuscson Elec.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

**2.     The Settlement Is Reasonable In Light of the Strengths and Weaknesses of Plaintiff's Case**

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). In assessing the strength of the plaintiff's case and the probability for success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation omitted).  There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Here, Plaintiff alleges that Delta used forms that included both the disclosure form and extraneous information in the same document.  Plaintiff contends that Delta's use of this document in employment applications facially violates the FCRA, which provides:

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) *a clear and conspicuous disclosure has been made in writing* to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and (ii) that consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

However, the analysis does not end there.  Plaintiff must also prove that the violation was "willful" under 15 U.S.C. § 1681n(a).  In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty." *See also Willes v State Farm Fire & Cas. Co*., 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard). Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense. *See*, *e.g.*, *Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) (holding that a defendant was not liable for statutory damages because the violation arose from a "reasonable construction" that the truncation requirement of § 1681c(g) was inapplicable to email receipts); *Long v Tommy Hilfiger U.S.A*., 671 F.3d 371(3d Cir. 2012) (holding that defendant were not liable under the FCRA because their practice was merely a "careless interpretation" of the law and is not a "willful" violation).

The Ninth Circuit's decision in *Syed* held that: "in light of the clear statutory language that the disclosure document must consist solely of the disclosure, a prospective employer's violation of the FCRA is willful when the employer includes terms in addition to the disclosure." *Syed v. M-I LLC*, 852 F.3d 492, 496 (9th Cir. March 20, 2017.)

Here, Defendant would argue that the state law disclosures are closely related enough to the purpose of the disclosure that they should be regarded as not violating the FCRA or at least that any violation should not be deemed willful.  *See, e.g., Soman v. Alameda Health Sys.*, No. 17-cv-06076-JD, 2018 WL 6308185, at *3 (N.D. Cal. Dec. 3, 2018) ("The three state-law boxes are not of a sort that would make the notice in the FCRA disclosure less than clear and conspicuous in any meaningful way or violate the intent of being 'solely' disclosures.").[3]  As for

---

[3] An appeal and FCRP Rule 60 motion was filed regarding the decision in *Soman*. *Soman v. Alameda Health Sys.*, No. 17-cv-06076-JD, ECF No. 51 and 60.  In contrast to *Soman*, another Northern District of California Court denied a motion to dismiss involving similar forms in *Poinsignon v. Imperva*, 2018 WL 1709942, at *4 (N.D. Cal., 2018).

the statement in the disclosure explaining that the authorization of the background check does not "create any sort of contract, obligation or duty between me and Delta," Delta would argue that the statement does not detract from the force of the disclosure and even if did the violation was not willful.

Delta's motion for summary judgment alleged a variety of Defendant's defenses, arguing that: (1) Schofield's first through fourth claims for relief are barred by the applicable statutes of limitations under the FCRA, the ICRAA, and the CCRAA; (2) Schofield's third claim for relief under the ICRAA further fails because he has not suffered any actual damages and statutory damages are unavailable in class actions under the ICRAA; (3) Schofield's fourth claim for relief under the CCRAA further fails because Delta did not procure or cause to be procured a consumer credit report on Schofield; and (4) Schofield's fifth claim for relief under the UCL fails because he does not seek restitution or have standing to pursue injunctive relief—the only available remedies under the UCL. Defendant withdrew their motion for summary judgment prior to Plaintiff filing an opposition, due to the parties' agreement to settle. If not for the settlement, Plaintiff would have vigorously opposed the motion for summary judgment.

The Setareh Law Group has been involved as counsel in two standalone disclosure cases where summary judgment was granted in favor of the defendant. Those cases are *Lewis v. Southwest Airlines*, 2018 WL 400775 (N.D. Tex. January 11, 2018) and *Gilberg v. California Check Cashing Stores, Inc.*, Eastern District of California Case No. 2:15-cv-02309-JAM-AC (summary judgment granted June 13, 2017). Both are cases where the FCRA disclosure form contained extraneous information but not a *Syed* type liability release. (Setareh Decl. ¶ 19.)

The availability of these defenses to Defendant, coupled with Plaintiff's burden to show that Defendant engaged in "reckless disregard of statutory duty," make it challenging for Plaintiff to prove ultimate liability. *See In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014) (finding that the "strength of plaintiff's case" factor "weighs in favor of settlement" where "willfulness" under FCRA is a triable issue); *see also Torres v. Pet Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015)

(Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this issue of willfulness[under 15 U.S.C. §1681n]…[this] weighs in favor of settlement").

As some courts have categorically rejected the theory of liability advanced here, Plaintiff faces substantial risk of a complete loss in this case. Plaintiff also faces the prospect that the Court could rule that Plaintiff's claims are time-barred.

Some courts have refused to grant class certification for cases seeking statutory penalties on the grounds that liability "would be enormous and completely out of proportion to any harm suffered by the plaintiff." *Serna v. Big A Drug Stores, Inc*., No. 07-0276 CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007) (quoting *London v. Wal-Mart Stores, Inc*., 340 F.3d 1246, 1255 n.5 (11th Cir. 2003)). While the Ninth Circuit clarified that such matters are properly considered at the merits stage, the court also observed that the district court may have the power to reduce the amount in penalties as "constitutionally excessive" even if the plaintiff were to prevail. *See Bateman v. Am. Multi-Cinema, Inc*., 623 F.3d 708, 723 (9th Cir. 2010).

Defendant withdrew their motion to transfer prior to Plaintiff filing an opposition, due to the parties' agreement to settle. If not for the settlement, Plaintiff would have vigorously opposed the motion to transfer. If Delta's motion to transfer venue was granted, this case would have been transferred from this Court to the United States District Court for the Northern District of Georgia, which would have made successfully litigating the matter much more difficult for Plaintiff and his counsel. (In part, it would be challenging to litigate this matter in Georgia because the *Syed* decision and the subsequent *Gilberg* decision would not have been binding on the Georgia federal court).

In light of the challenges Plaintiff faces moving forward, the proposed Settlement represents a fair and adequate resolution of these claims.

3.      **The Risk, Expense and Complexity of the Case, Including the**
        **Risk of Decertification, Favor Approval of the Settlement**

While this case is not factually complex, the uncertain legal landscape creates a substantial risk of proceeding to certification and beyond. Even if Plaintiff were to prevail in certification, the costs for both parties would mount, and Plaintiff would face "substantial risk

of incurring the expense of a trial without any recovery," given that Delta would argue that class members incurred no actual damages. *Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 451.

This settlement was negotiated and finalized before the *Gilberg* decision. Prior to the *Gilberg* decision, it was not certain that a court would have found that the forms at issue were unlawful. Furthermore, only recently was there substantial litigation on the FCRA, and litigants face a greater chance of changes in case law or statutory enactments that will eliminate liability. *See Bassett v. ABM Parking Services, Inc.,* 883 F.3d 776, 778 (9th Cir. 2018) (describing an FCRA amendment in 2008 that insulated merchants from liability on printed expiration date on a receipt). Plaintiff thus faces additional "risk that an opinion could issue changing the legal landscape in this relatively new area of statutory law," which favors settlement. *Id.* And even if Plaintiff were to succeed in certifying the class, the "risk that a class action may be decertified at any time generally weighs in favor of settlement." *Lane v. Facebook, Inc.,* No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) (citing *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)).

Ultimately, in considering the risks of litigation, "a court may consider the vagaries of litigation of immediate recovery by way of compromise to the mere possibility of relief, after protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal quotations omitted). Here, the Settlement delivers immediate recovery for all Settlement Class Members and avoids the risks and expenses of protracted litigation, including potential interlocutory appeals and an appeal after a trial. This factor supports approving the Settlement. *See In re Portal Software Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the inherent risks of proceeding to… trial and appeal also support the settlement).

### 4.  The Amount Offered in Settlement Supports Approval

Defendant is paying a total settlement amount of $2,300,000.  The Ninth Circuit has held that the reasonableness of a settlement should be evaluated in relation to the potential compensatory damages, not including any penalties that might be awarded.  *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 964 (9th Cir. 2009); *see also Miller v. CEVA Logistics USA*

*Inc.*, 2015 WL 729638, *7 (N.D. Cal. 2015) (accepting settlement valuation based on damages exclusive of interest and penalties). The class members have relatively small amounts of money at stake, as the FCRA's damages provision limits recovery to between $100 and $1,000 or actual damages, whichever is greater.[4] With 40,042 class members, the FCRA damages i.e., the core claim in the Action, are between $4,004,200 to $40,042,000. A recent decision from the Northern District used the $100 per violation penalty as the comparator for determining the fairness of an FCRA settlement. *Leland v. Lagos Stanford Junior University*, 2017 WL 113302 *4 (N.D. Cal. 2017.) Here, the $2,300,000 non-reversionary settlement amount is 57.43% of the amount that would be awarded if the jury awarded a $100 penalty per violation.

The total settlement amount is $2.3 million for a class of 40,042 class members. Class members do not need to make a claim but instead will be mailed a check directly. The settlement is also non-reversionary. By contrast, *Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final approval) involved a claims made settlement (albeit a non-reversionary one) where 66,676 class members shared in a $225,000 settlement. Similarly, *In re Uber FCRA Litigation,* 2017 WL 2806698 (N.D. Cal. 2017) (granting preliminary approval) involved a claims made settlement (also non-reversionary) where 1,025,954 class members shared in a $7.5 million settlement. Therefore, this case has a gross recovery of $57.43 per class member compared to $3.3 per class member for the *Thumbtack* case and $7.31 per class member for the *Uber* case. These numbers compare favorably with other recent settlements as well. *See, e.g., Nesbitt v. Postmates, Inc.*, San Francisco Superior Court Case No. CGC-15-547146 (final approval granted on November 8, 2017; 186,988 class members shared in a $2,500,000 settlement fund, meaning the gross settlement amount per class member was $13.30 per class member); *Aceves v. AutoZone Inc.*, Case No. 5:14-CV-02032, ECF No. 58 (C.D. Cal. Nov. 18, 2016) (granting final approval where 206,650 class members shared in a $5,700,000 settlement--$27.58 gross and approximately $20 net per class member); *Feist v. Petco Animal*

---

[4]  Plaintiff submits it is unlikely that a jury would render an award which was close to the maximum $1,000 per violation. While Plaintiff believes that Defendant's disclosure forms violate the law, the underlying conduct is not such that it would inflame the passions of a jury.

*Supplies, Inc.,* Case No. 3:16-cv-01369-H-DHB ECF No. 48 (S.D. Cal. 2018) (granting final approval; 37,279 class members shared in a $1,200,000 settlement--$32 gross and approximately $20 net per class member).

The settlement percentage here is also well above the amount of many non-FCRA settlements granted final approval by courts within the Ninth Circuit.  *See, e.g., Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. 2015) (7.3% of the "estimated trial award"); *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (3%); *In re LDK Solar Secs. Litig.*, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010) (5% of "plaintiff's expert estimated damages").  Of course, it should not be surprising that a settlement yields less than what the class could theoretically have recovered at trial.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").  Importantly, the reasonableness of a settlement is not dependent upon the amount approaching the potential recovery plaintiffs might receive if successful at trial. *See Nat'l. Rural Tele. Coop.*, 221 F.R.D. at 527.  Indeed, compromise is the very nature of settlement. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979). Moreover, courts recognize that there is an inherent "range of reasonableness" in determining whether to approve a proposed settlement, a range which recognizes the uncertainties of law and fact and attendant risks and costs associated with taking any litigation to completion. *See Frank v. Estman Kodak Co.*, 288 F.R.D. 174, 186 (W.D.N.Y. 2005).

**5.   The Settlement Was Finalized After a Thorough Investigation**

Courts may also consider the extent of discovery and the current stage of the litigation to evaluate whether parties have sufficient information to make an informed decision to settle the action. *See Linney*, 151 F.3d at 1239. A settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient investigation has been conducted. *See Eisen v. Porsche Cars North American, Inc.*, Case No. 11- 09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014) (finding that counsel had "ample information and opportunity to

assess the strengths and weaknesses of their claims" despite "discovery [being] limited because the parties decided to pursue settlement discussions early on.").

Plaintiff engaged in significant investigation and discovery, including reviewing documents and defending the deposition of Plaintiff. (Setareh Decl. ¶ 5.) Based on this discovery and on their independent investigation and evaluation, Plaintiff's counsel is of the opinion that this Settlement for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation of this type, as well as the various defenses asserted.

**6.      The Views of Experienced Counsel Should Be Accorded  Substantial Weight**

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, the parties achieved a settlement after a thorough review of relevant documents and information, as well as an analysis of the parties' claims and defenses.  The expectations of all parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-length negotiations and finalized with the assistance of an experienced mediator who made a mediator's proposal.

Plaintiff was represented by experienced class action counsel possessing significant experience in class action matters including experience in Fair Credit Reporting Act cases involving allegations that the defendant employer failed to provide a legally compliant stand-alone disclosure. (*See* Setareh Decl. ¶¶ 13-19.) Setareh Law Group appealed an order to the United States Court of Appeals for the Ninth Circuit in *Gilberg v. California Check Cashing Stores, Inc. et al.* The Court of Appeals found in the plaintiff's favor that the background check document at issue violated the "clarity" requirement of the FCRA. *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (C.A.9 (Cal.), 2019).  Setareh Law Group has successfully

handled hundreds of class actions and has over 80 Westlaw citable decisions. (Setareh Decl. ¶ 13.) Shaun Setareh, principal of Setareh Law Group, received the prestigious California Lawyer Attorney of the Year award from the Daily Journal. (*Id*.) Recently, as lead counsel in *Troester v. Starbucks Corporation*, et al., Setareh Law Group was victorious when the California Supreme Court clarified and rejected the application of the widely adopted federal *de minimis* doctrine to California's wage and hour laws. *Troester v. Starbucks Corp*., 5 Cal.5th 829 (Cal., 2018). *Troester* is arguably one of the most important wage and hour decisions in years, as it effects every hourly employee who works in the state.

Likewise, Delta's counsel, Morgan Lewis & Bockius LLP, is a nationally recognized law firm. Thus, the parties' recommendation to approve this Settlement should "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience and views of counsel and the involvement of a mediator in approving a settlement resolving automotive defect allegations).

**7.    The Presence or Absence of a Governmental Participant**

There is no governmental participant in this case. Therefore, this factor is neutral. *E.g., Mathein v. Pier 1 Imports (U.S.) Inc.,* 2018 WL 1993727 *8 (E.D. Cal. April 27, 2018): "Because there are no separate governmental participants involved in the action, this factor is neutral in the court's analysis of the settlement agreement."

**8.    The Reaction of the Class is Overwhelmingly Positive**

As of the date of this filing, there are no objections to the settlement and only fourteen requests for exclusion. This means only .035 percent of the class members chose to request exclusion. Therefore, the reaction of the class is overwhelmingly positive. This factor supports approval.

**B.    Class Certification Is Appropriate for Settlement Purposes**

On February 27, 2019 the Court granted conditional certification of the settlement class. No intervening case law or events provide a basis for disturbing that conclusion.

//

//

**C.     The Court Should Award The Requested Attorney Fees, Expenses, Settlement Administrator Expenses and Class Representative Service Award**

**1.     The Requested Fee Award Is Reasonable**

The Settlement Agreement provides that Class Counsel may apply for attorneys' fees not to exceed 33-1/3% of the Gross Settlement Amount. Although the Settlement Agreement provides for 33-1/3% of the Gross Settlement Amount in attorneys' fees, Class Counsel is only seeking attorney's fees of 25% of the Gross Settlement Amount. Thus, Plaintiff seeks a fee award of $575,000, which amounts to 25% of the $2,300,000 Settlement Fund. This fee request is in line with the 25% benchmark and should be granted.

**a) Applicable Law Regarding Attorneys' Fees**

District courts may award attorneys' fees and costs to a prevailing plaintiff where "(1) fee shifting is expressly authorized by the governing statutes; (2) the [defendant] acted in bad faith or willfully violated a court order; or (3) the successful litigants have created a common fund for recovery or extended substantial benefit to the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011.) In the class action context, courts generally award attorneys' fees and costs pursuant to the common fund or statutory fee-shifting methodologies. *In re Bluetooth*, 654 F.3d at 941.

Where there is a common fund, "the primary basis of the fee award remains the percentage method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *In re Bluetooth*, 654 F.3d at 942.  The Ninth Circuit has consistently awarded attorneys' fees under the common fund method, because "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003.)  "The common fund doctrine is properly applied, however, only if (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir. 1989). These requirements are met where "each member of a certified class has an undisputed and

mathematically ascertainable claim to part of a lumpsum [settlement] recovered on his behalf." *Id*.  The Ninth Circuit has set a benchmark of 25% of the common fund.

The proposed settlement herein creates a common fund of $2,300,000. Each settlement class member who cashes the check mailed to them will receive a share of the settlement fund. Any money left over will go to the *cy pres* recipient NACA Education Fund.  No money will revert to Defendant. Thus, the common fund doctrine enables the Court to determine a reasonable fee with "some exactitude." *Paul*, 886 F.2d at 271 (internal citation omitted).

While not required, courts may "cross-check" the percentage of the common fund against the lodestar to ensure reasonableness of the fee award. *Vizcaino,* 290 F.3d at 1050 ("The district court applied the lodestar method as a cross-check of the percentage method. Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The lodestar figure is determined by multiplying the number of hours reasonably expended on the litigation by hourly rates. *In re Bluetooth*, 654 F.3d at 941. The lodestar figure is only the starting point for determining an appropriate fee. *Id*.; *Staton,* 327 F.3d at 965; *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). A court may reduce or enhance the lodestar figure based on several "reasonableness" factors, including the following: (1) the quality of the representation; (2) the benefit obtained for the class; (3) the complexity and novelty of the issues presented; and (4) the risk of non-payment. *In re Bluetooth*, 654 F.3d at 942. As set forth below, all of these factors favor approval.

### b) Class Counsel Provided High Quality Representation that Supports the Requested Fee Award

Plaintiff was represented by experienced class action counsel possessing significant experience in class action matters, including significant experience in Fair Credit Reporting Act cases involving allegations that the defendant employer failed to provide a legally compliant stand-alone disclosure. (*See* Setareh Decl. ¶¶ 13-19.) This substantial experience allowed Class Counsel to provide high quality representation of Plaintiff and the settlement class.

20

**c) The Settlement Provides Benefit to the Class and Supports the Requested Fee Award**

Class members will receive a direct financial benefit from this settlement. The gross settlement amount is $57.43 per class member, with an estimated net settlement payment of $34.60 per class member. (Myette Decl. ¶ 16). Class members will not have to submit a claim form but will be mailed checks directly. The results achieved compare favorably to other recent FCRA cases. *See Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final approval) involved a claims made settlement (albeit a non-reversionary one) where 66,676 class members shared in a $225,000 settlement or a gross recovery of $3.30 per class member. Similarly, *In re Uber FCRA Litigation,* 2017 WL 2806698 (N.D. Cal. 2017) (granting preliminary approval) involved a claims made settlement (also non-reversionary) where 1,025,954 class members shared in a $7.5 million settlement or  a gross recovery of $7.31 per class member.

**d) The Complexity of the Issues Supports the Fee Award**

The risks of the litigation, including the high uncertainty regarding the law concerning the FCRA, the risk that the forms would be found to be compliant and the risk that if Defendant's conduct was found not to be willful class members would recover nothing, support the fee award. As discussed in further detail above, the uncertain legal landscape of the FCRA creates a substantial risk of proceeding to certification and beyond. Although Plaintiff believes that he would have prevailed had litigation continued through class certification and ultimately trial, considerable risks, delays and uncertainties nevertheless exist with continued litigation. The parties have achieved a fair Settlement that reflects a meaningful recovery on behalf of Settlement Class Members and that merits the Court's final approval.

**e) The Risk of Nonpayment Supports the Requested Fee Award**

At this juncture, the Settlement would entitle each Settlement Class Member to a significant recovery. In contrast, if the case would continue in litigation, even if Plaintiff prevailed on a class certification motion, any appeal by Defendant would prolong the litigation and delay remedies to the Class. In fact, courts have found such risks to support an upward

adjustment of the 25% benchmark. *See Deaver v. Compass Bank*, No. 13-cv-222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015) (awarding 33% of common fund and concluding that "[g]iven the significant challenges Plaintiff would have faced in maintaining this litigation through class certification and trial, the results achieved in this case are very favorable."); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (awarding one third of common fund based on significant risk of continued litigation where settlement provided only 36% of potential damages.)

### f) The Contingent Nature of the Settlement Supports the Fee Award

The contingent nature of the litigation supports the requested fee. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299. By undertaking a class action on a contingency fee basis, counsel not only must turn away other income generating opportunities but must take on the risk of never receiving compensation at all. *Beaver v. Tarsadia Hotels,* No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *13 (S.D. Cal. Sept. 28, 2017). A contingent fee must be higher than a fee for the same legal services paid as they are performed because it "compensates the lawyer not only for the legal services he renders but for the loan of those services." *Id.* (quoting *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004)). Here, Class Counsel represented Plaintiff and the Settlement Class on a contingency fee basis, with no guarantee of payment. (Setareh Decl. ¶ 29).

### g) The Reaction of the Settlement Class Supports the Fee Award

The reaction of the Settlement Class supports the requested fee. To dates there are no objections and only fourteen requests for exclusion. This means only .035 percent of the class members chose to request exclusion. *In re Heritage Bond Litig.*, 2005 WL 1594389, at *15 ("absence of objections from the class is also a factor in determining the proper fee award").

### f) A Lodestar Analysis Also Supports The Requested Fee

Class Counsel's lodestar as of May 24, 2019 is $205,800. (Setareh Decl. ¶ 27). The hours and hourly rates of the timekeepers on this case are as follows:

| Attorney | Bar Date | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Shaun Setareh | 1999 | $750 | 103.75 | $77,812.50 |
| Thomas Segal | 2002 | $650 | 120.75 | $78,487.50 |
| Farrah Grant | 2013 | $450 | 82.25 | $37,012.50 |
| Ashley Batiste | 2017 | $375 | 2.50 | $937.50 |
| Lilit Ter-Astvatsatryan | 2018 | $350 | 33 | $11,550 |

Additional details about the qualifications of these attorneys are set forth in Declaration of Shaun Setareh. (Setareh Decl. ¶¶ 21-26).

The above rates are within the range of rates approved by courts for complex class actions, including wage-and-hour actions. *See, e.g., Wang v. Chinese Daily News, Inc.,* 2008 U.S. Dist. LEXIS 123824 at 8–9 (C.D. Cal. filed Oct. 3, 2008) (in a wage-and-hour action, approving 2008 rates of up to $800 per hour*), vacated on other grounds*, 132 S. Ct. 74 (2011); *Rutti*, 2012 WL 3151077 at 11 (in a wage-and-hour action, approving 2012 rates of up to $750 per hour); *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012) (approving 2012 rates of up to $850 per hour); *In re HP Laser Printer Litig.*, 2011 WL 3861703 at 5–6 (C.D. Cal. filed Aug. 31, 2011) (approving rates of up to $800 per hour); *Perfect 10 v. Giganews Inc.,* 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. 2015) (approving  2015 rates of $750 for an 18 year attorney, $640 for a 12 year attorney, and $640 for a 7 year attorney, and $505 for a 3 year attorney); *Stuart v. RadioShack Corp*., No. C-07-4499, 2010 U.S. Dist. LEXIS 92067, at *16 (N.D. Cal. Aug. 9, 2010) (finding rates ranging between $600 and $1,000 reasonable); *In re Apple Inc. Secs. Litig*., No. 5:06-CV-05208, 2011 U.S. Dist. LEXIS 52685, at *16 (N.D. Cal. May 17, 2011) (approving hourly rate of $836); *In re TFT-LCD (Flat Panel) Antitrust Litig*., 2013 WL 1365900, at *9 (approving hourly rates up to $1000); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig*., No. C 10-02124 SI, 2014 WL 186375, at *2 (N.D. Cal. Jan. 16, 2014) (approving hourly rates up to $850);  *Kearney v. American Honda Motor Am*. 2013 U.S. Dist. LEXIS 91636  *24 (approving hourly rates of $650-$800 for senior attorneys in consumer class action); *Holloway v. Best Buy Co*., C-05-5056-PJH (MEJ) (N.D. Cal.) (approving 2011 partner rates of $825 to $700 an hour).

The requested $575,000 fee is only a 2.79 multiplier over the lodestar amount. This is within the multiplier range typically applied by district courts. *See, e.g., Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245, 264 (N.D. Cal. 2014) (54 percent of lodestar multipliers fall within the 1.5 to 3.0 range, and 83 percent of multipliers fell within the 1.0 to 4.0 range); *Hopkins v. Stryker Sales Corp*., No. 11-CV-02786- LHK, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6, 2013) (multiplier of 2.86); *In re TFT-LCD (Flat Panel) Antitrust Litig., 2013 WL 1365900,* at *8 (multipliers ranging on average between 2.4 – 2.6); *Pokorny,* 2013 WL 3790896, at *2 (multiplier of 2.2); *see also Milliron v. T-Mobile USA, Inc.,* 423 F. App'x 131, 135 (3d Cir. 2011) (approving district court's use of 2.2 multiplier); *Di Giacomo v. Plains All Am. Pipeline, Nos*. 99–4137 & 99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier); *In re Aremissoft Corp. Sec. Litig*., 210 F.R.D. 109, 134–35 (D.N.J. 2002) (4.3 multiplier); *Sobel v. Hertz Corp*., No. 306-CV-00545-LRH-RAM, 2014 WL 5063397, at *10 (D. Nev. Oct. 9, 2014) (multiplier of 2.0).

The various *Bluetooth* factors support application of a positive multiplier in this case. Here, Class Counsel are highly experienced class action litigators and prevailed against a nationally recognized, high caliber defense firm. The results obtained for the class are excellent particularly in light of the risks in the case. Finally, the contingent nature of the action supports an upward adjustment. Therefore, the requested attorneys' fees of $575,000 should be awarded.

## 2.    Plaintiff's Litigation Expenses Should be Reimbursed

The Settlement Agreement provides for reasonable out-of-pocket costs incurred in this action. (Settlement ¶ 5.4.1.) Prevailing parties may recover as part of statutory attorney fees "litigation expenses when it is the  prevailing practice in the given community for lawyers to bill those costs separately from their hourly rates." *Trs. Of the Constr. Indus and Laborers Health and Welfare Trust v. Redland Ins. Co*., 460 F.3d 1253, 1258 (9th Cir. 2006.) In California, attorneys are reimbursed for out of pocket expenses such as "1) meals, hotels, and transportation; 2) photocopies; 3) postage; 4) filing fees; 5) messenger and overnight delivery; and 6) online legal research." *Johnson v. General Mills, Inc.*, 2013 WL 3213832 *6 (C.D. Cal.

2013.) Here, Plaintiff has incurred $13,430.46 in litigation expenses including mediator fees, travel, postage, Westlaw legal research, PACER, and court filing fees and estimates an additional $360 in expenses for delivering courtesy copies of the final approval motion and traveling to attend the final approval hearing. (Setareh Decl. ¶ 30.) Plaintiff seeks an award of $13,790.46 (Plaintiff will submit a declaration if the actual costs are less).

### 3. The Settlement Administrator's Expenses Should Be Approved

The charges for the Settlement Administrator Rust are currently estimated to be $70,000. (Myette Decl. ¶ 16). Rust has significant experience administrating class action settlements. (*Id*. ¶ 2). Rust's costs are reasonable and should be approved. (Setareh Decl. ¶ 31).

### 4. The Court Should Approve An Incentive Award

Plaintiff requests an incentive award of $10,000. Plaintiff has assisted with the prosecution of the case including providing counsel information about Defendant's policies and practices, traveling to and appearing for deposition, assisting counsel in preparing for mediation, traveling to and attending mediation and reviewing settlement and other case documents. (Declaration of Joseph Schofield ¶ 7.) He undertook to prosecute the case despite the risk of a cost judgment against him, and despite the potential risk that prospective employers would hold it against him. (*Id*. ¶¶ 8-9.) In addition to the Release Claims released by all Settlement Class Members, Plaintiff has agreed to a wide general release. (Settlement 5.3.1.) The requested incentive award is reasonable and should be approved.

## IV. CONCLUSION

The parties have negotiated a fair and reasonable settlement. Accordingly, Plaintiff moves the Court to grant final approval, award the requested attorney fees and litigation expenses, settlement administrator expenses and incentive award.

Respectfully submitted,

SETAREH LAW GROUP

Dated: May 24, 2019       BY___/s/ Shaun Setareh_____
                          SHAUN SETAREH
                          Attorneys for Plaintiff
                          JOSEPH SCHOFIELD